UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| ROBERT R. BELL, JR., | ) | |
| | ) | |
| and | ) | Case No. 1:11-CV-00181 |
| | ) | |
| BERNARD FENTRESS, on behalf of | ) | Judge Curtis Collier |
| themselves and all others similarly situated | ) | JURY DEMAND |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| US XPRESS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT US XPRESS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Defendant U.S. Xpress, Inc. ("USX") files this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). USX previously moved to dismiss the original Complaint filed by Plaintiff Robert R. Bell, Jr. Rather than opposing that motion, Plaintiffs filed the FAC, adding Bernard Fentress as a named plaintiff. As detailed below, however, the FAC fails to cure the defects in the original Complaint.

Plaintiffs first allege that USX committed a willful violation of the Fair Credit Reporting Act ("FCRA"), 42 U.S.C. §§1681, *et seq.*, by failing to provide adequate disclosure that USX may obtain consumer reports (Count One). Second, Plaintiffs allege that USX committed a willful violation of the FCRA by failing to obtain adequate authorization to obtain consumer reports (Count Two). Third, Plaintiffs allege that USX committed a willful violation of the FCRA by failing to provide proper adverse action notices when it denied employment based in whole or part on their consumer reports (Count Three). Finally, the FAC asserts an alternative cause of action for negligent violations of the FCRA (Count Four).

Plaintiffs seek to maintain each claim on a class basis under Fed.R.Civ.P. 23. Pursuant to 15 U.S.C. § 1681p, the statute of limitations for an FCRA claim can be as little as two years or as long as five years, depending on if and when a plaintiff was on inquiry notice of a possible violation. The original Complaint asserted class claims over the longest possible period of five years. (Complaint, ¶1). The FAC initially is more coy in referring to "the period provided by 15 U.S.C. § 1681p," but subsequent allegations confirm that Plaintiffs still seek to assert their claims over a full five-year period. (FAC, ¶¶1, 16).

Through this Motion, USX respectfully requests the following relief:

- Count One, asserting that USX committed a willful violation by providing an inadequate disclosure, should be dismissed in its entirety.

    o Plaintiffs' signed applications disclosed that USX would obtain consumer reports. This notice meets the relaxed standard for notice to applicants for commercial truck driving positions not applying in person.

    o While Plaintiffs also claim they did not receive a summary of rights set forth in 15 U.S.C. § 1681m(a)(3), Congress eliminated a private right of action based on "any failure by any person to comply" with § 1681m.

- Count Two, asserting that USX committed a willful violation by failing to obtain consent to obtain consumer reports, should be dismissed in its entirety. Plaintiffs' signed applications meet the relaxed standard for consent by applicants for trucking positions not applying in person.

- Count Three, asserting that USX committed a willful violation by not providing adverse action notices, should be dismissed as to Plaintiff Fentress as he cannot allege that he was disqualified from employment based on his consumer report.

- For the same reasons noted above, Count Four, asserting an alternative theory of negligent violations, should be dismissed except as to Plaintiff Bell's adverse action notice claim.

- Plaintiff's class allegations as to all four Counts are subject to dismissal.

  o Based on Plaintiffs' request for actual (including compensatory) and punitive damages and their demand for a jury trial, they *never* will be able to meet the requirements for class certification under Rule 23(b)(3).

  o The "appropriate relief" alluded to in Count Four would be actual damages. Again, these damages cannot be recovered on a class basis.

  o A two year statute of limitations period applies to Plaintiffs' own claims, and they *never* will be able to apply the FCRA's statutory discovery rule to assert claims going back five years on a class basis.

## I.  SUMMARY OF FACTS

Plaintiff Bell included the following allegations in his original Complaint. On or about Friday, October 2, 2009, he applied via facsimile for a commercial truck driver position with USX. (Complaint, ¶7). In doing so, he signed an application authorizing USX to request "information from various state agencies that maintain records concerning ... criminal history...." (Id., ¶8). USX then "ordered a criminal background report" on Bell from HireRight Solutions, Inc. ("HireRight"). (Id., ¶11). HireRight provided USX with a background report that misidentified him as having been convicted for felony burglary, felony robbery, grand larceny, and several parole violations, all leading to a ten-year prison sentence. (Id.). USX determined not to hire Bell based on this report. (Id., ¶12). He learned of the inaccurate report upon receiving a copy of it, along with a "derogatory letter," from HireRight on or about Wednesday, October 7, 2009. (Id., ¶14).

The FAC no longer includes these specific allegations. Similarly, the FAC includes no specific allegations as to Plaintiff Fentress, beyond alleging that he was denied employment with USX and received a copy of his consumer report from HireRight. (FAC, ¶¶8, 15). In fact, Fentress applied for employment by facsimile on August 11, 2010. (See "Exhibit A").[1]

## II.  ARGUMENT

### A.  Standard for Motions to Dismiss

As the court in Graddy v. Blue Cross Blue Shield of Tennessee, 2010 WL 670081 (E.D. Tenn. Feb. 19, 2010), recounted:

> In Ashcroft v. Iqbal, the Supreme Court of the United States held that to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" -- U.S. --, --, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This new pleading standard was first announced in Bell Atl. Corp. v. Twombley, an antitrust case. However, in Iqbal the Court declared the Twombley standard would henceforth apply to "all civil actions." Iqbal, 129 S.Ct. at 1953 (quoting Fed.R.Civ.P. 1).

Id. at *1.

Based on this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Graddy, 2010 WL 670081 at *1 (quoting Iqbal, 129 S.Ct. at 1949). "The second principle of Iqbal is that 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" Id. (citing Iqbal, 129 S.Ct. at 1950). "Together, Iqbal and Twombley form a substantial departure from the traditional standard governing motions to dismiss.... After Iqbal, ... if 'the well-pleaded facts do not permit the court to infer *more than the mere possibility* of misconduct, the complaint has

---

[1] While Plaintiffs chose not to attach Fentress's referenced application and consumer report, this Court may consider these documents in ruling on USX's motion. See In re Joseph Prebul, 2011 WL 2947045, *3 (Bkrtcy. E.D. Tenn. 2011). Exhibits referenced herein are attached to USX's motion.

alleged – but it has not 'show[n]' – that the pleader is entitled to relief.'" Id. at *2 (quoting Iqbal, 129 S.Ct. at 1950 and Fed.R.Civ.P. 8(a)(2)) (emphasis from Graddy).

**B.    Neither Plaintiff Can Establish a Disclosure Claim (Count One).**

Count One alleges that USX "willfully violated 15 U.S.C. § 1681b(b)(2)(B)(i) by failing to provide applicants with verbal, electronic, or written notice that a consumer [report] may be obtained for employment purposes." (FAC, ¶33). This provision allows for relaxed procedures for those applying for commercial truck driving positions by mail, telephone, computer or other similar means. Under those circumstances, disclosure need not be "clear and conspicuous ... in writing ... in a document that consists solely of the disclosure." Compare 15 U.S.C. § 1681b(b)(2)(A)(i). Instead, the statute allows USX to provide these applicants "by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes...." See 15 U.S.C. § 1681b(b)(2)(B)(i).

Bell admittedly signed an employment application including the following language:

> **In connection with my application for qualification with you, I understand that my investigative consumer report(s) are being requested** that will include information as to my character, credit history, work habits, performance, experience, accident history, drug and alcohol test results, including results from any pre-employment drug and/or alcohol test, along with reasons for termination or disqualification of past employment obtained from employers. **Further, I understand that you will be requesting information concerning my** driving record and/or information from various state agencies that maintain records concerning credit record, **criminal history,** traffic offenses and accidents, as will [sic] as information my previous driving record request made from such state agencies. **I understand I have a right to make a written request within a reasonable amount of time to receive additional detailed information about the nature of this investigation. I hereby authorize U.S. Xpress Enterprises, Inc. and its subsidiaries to obtain the above-described information** and agree that such information, and my experience history with you if I am qualified, will be supplied to other companies....

(FAC, ¶9, Ex. A) (emphasis added). (See also "Exhibit A"). This disclosure not only indicated that "a consumer report may be obtained;" it expressly stated that "consumer report(s) are being requested." Thus, Plaintiffs cannot allege that they received no notice.

Beyond the issue of notice, Plaintiffs allege that USX willfully violated the FCRA "by failing to provide the applicant with verbal, electronic, or written notice of rights under 15 U.S.C. § 1681m(a)(3), including a right to obtain a free copy of a consumer background report from the consumer reporting agency within 60 days, and to dispute the accuracy or completeness of any information in the consumer report directly with the consumer reporting agency." (FAC, ¶34). This disclosure may also be "by oral, written, or electronic means" under the relaxed standards of 15 U.S.C. § 1681b(b)(2)(B)(i).

Curiously, the rights cited in the FAC are not listed under § 1681m(a)(3). The 2010 Dodds-Frank Wall Street Reform and Consumer Protection Act added a new § 1681m(a)(3), which bumped the summary of rights to which Plaintiffs refer to § 1681m(a)(4). Congress did not amend § 1681b(b)(2)(B)(i), and so the cross-reference therein still refers to § 1681m(a)(3). Likewise, the FAC still refers to § 1681m(a)(3). In any event, Plaintiffs' underlying allegation is that USX failed to discloses the summary of rights currently listed in § 1681m(a)(4), and previously listed in § 1681m(a)(3). (See FAC, ¶10, 33 (citing 15 U.S.C. § 1681m(a)(3)). (See also Complaint, Count Two, listing claim as "NOTICE OF 1681m(a)(3) RIGHTS").

Failure to comply with any provision of § 1681m, though, cannot support a private right of action. Congress expressly limited enforcement of such violations to federal officials when it passed the Fair and Accurate Credit Transaction Act ("FACTA") in 2003. Pub. L. 108-159, 117 Stat. 1952, 1993. Specifically, FACTA added a new subsection to § 1681m that provides as follows:

(8) Enforcement

(A) No civil actions. Sections 616 and 617 [15 U.S.C. §§ 1681n and 1681o] of this title **shall not apply to any failure by any person to comply with this section**.

(B) Administrative enforcement. This section shall be enforced **exclusively** under section 621 [15 U.S.C. § 1681s] of this title by the **Federal agencies** and officials identified in that section.

15 U.S.C. § 1681m(h)(8) (emphasis added). As referenced, 15 U.S.C. §§ 1681n and 1681o are the provisions of the FCRA that create private rights of action for willful or negligent violations, respectively. Thus, § 1681m(h)(8) eliminates any private right of action for "any failure by any person to comply with this section."

Moreover, courts have interpreted "this section" broadly to refer to "any failure by any person to comply" with any requirement listed in § 1681m. Within the Sixth Circuit, Tobler v. Equifax, 2009 WL 1491046 (E.D. Mich. May 27, 2009), granted a motion to dismiss upon ruling that it was "persuaded by the reasoning of the majority of federal courts which have held" that 15 U.S.C. § 1681m(h)(8) "has eliminated a private right of action as to the whole of 1681m." Id. at *3 (citing Perry v. First Nat'l Bank, 459 F.3d 816, 823 (7th Cir. 2006) ("The unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m.") and five concurring district court opinions).

As cited in Tobler, the U.S. Court of Appeals for the Seventh Circuit's ruling in Perry is the leading case holding that § 1681m(h)(8) eliminated a claim based on failure to comply with any requirement listed in § 1681m. In so holding, the Seventh Circuit cited fourteen district court decisions that had reached this same conclusion. Id. at 820-23. As the Seventh Circuit observed, "[s]o far as we are aware, every district court considering this issue – save one – has found that 15 U.S.C. § 1681m(h)(8) bars private enforcement of § 1681m in its entirety." Id. at 822. The sole outlier, Barnette v. Brook Road, 429 F.Supp.2d 741 (E.D. Va. 2006), strained to find that § 1681m(h)(8) only eliminated a private claim based on a failure to comply with subsection (h) of § 1681m. The Seventh Circuit rejected this analysis based on § 1681m's language and legislative history, as well as the fact that the statute still allowed for liability

through agency enforcement. Id. at 823. Since Perry, Barnette has become an outcast even in its own jurisdiction, as Bourdelais v. J.P. Morgan Chase Bank, 2011 WL 1306311, *6-8 (E.D. Va. April 1, 2011), recently rejected it in granting a motion to dismiss. Id.[2]

In sum, Plaintiffs did receive notice that USX may obtain a consumer report. Plaintiffs also cannot assert a cause of action based on an alleged "failure [by USX] to comply with" the requirements listed in § 1681m(a)(3). See 15 U.S.C. § 1681m(h)(8). Furthermore, Plaintiffs cannot allege a "willful" violation, which would require them to show that USX ran "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco Insur. Co. of America v. Burr, 551 U.S. 47, 69 (2007). Again, § 1681m(a)(3), as cited in the FAC and cross-referenced in § 1681b(b)(2)(B)(i), no longer even contains the summary of rights to which Plaintiffs refer. Needless to say, the serpentine provisions of the FCRA have proven difficult to decipher even for Congress, let alone employers.

Notably, Bell has voluntarily withdrawn a parallel Disclosure claim against Swift Transportation, another trucking company with which he applied for employment by facsimile or other similar means. (See "Exhibits B-D"). Thus, while the original complaint in the Swift case asserted as Count One a "Disclosure and Authorization" claim on behalf of Bell and other class members "who did not apply in person," the first amended complaint removes Bell as a plaintiff for that claim and instead as a new Count Three asserts an "Authorization" claim, but not a "Disclosure" claim, on behalf of Bell and other class members who did not apply in person. (See "Exhibit B" at ¶¶48-54; "Exhibit C" at ¶¶44-49, 56-60; "Exhibit D" at p. 6 (explaining that "Plaintiffs' First Amended Complaint withdraws Bell as a party under Count One").

---

[2] A steady stream of cases have continued to follow the analysis of Perry. See Bourdelais, 2011 WL 1306311 at *6 (citing nine post-Perry district court opinions); Ogbon v. Beneficial Credit Services, 2011 WL 2847927, *3 (S.D.N.Y. July 8, 2011); Shaw v. Yorke, 2011 WL 2563177, *1 (M.D. Fla. June 28, 2011); Neals v. Mortgage Guar. Ins., 2011 WL 1897442, *9 (W.D. Pa. Apr. 6, 2011).

**B.    Neither Plaintiff Can Establish a Consent Claim (Count Two).**

Count Two alleges that USX "willfully violated 15 U.S.C. §1681b(b)(2)(B)(ii) by failing to obtain the applicants' oral, written, or electronic consent prior to procuring a consumer report for employment purposes." (FAC, ¶¶38). This provision also allows for relaxed procedures for applicants for trucking positions not applying in person. Again, such applicants need not provide a written authorization on a stand-alone document, and consent can even be oral. Compare 15 U.S.C. §1681b(b)(2)(A)(ii).

Plaintiffs cannot allege that USX failed to obtain their consents to obtain consumer reports, let alone that it ran "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. Again, Bell signed an application that expressly stated that his "investigative consumer report(s) are being requested" and that he "hereby authorize[s] U.S. Xpress Enterprises, Inc. and its subsidiaries to obtain the above-described information ...." (FAC, ¶9, Ex. A). Fentress signed an application which, while somewhat different in format, also authorized USX to procure a consumer report. (See "Exhibit A"). Therefore, Count Two should be dismissed.

**C.    Plaintiff Fentress Cannot Establish and Adverse Action Claim (Count Three).**

Count Three alleges that USX "willfully violated 15 U.S.C. §1681b(b)(3)(B)(i) by taking adverse action based in whole or part upon the consumer report without providing verbal, electronic, or written notice within 3 business days of taking the adverse action (i) that adverse [action] has been taken based in whole or part on the consumer report, (ii) the name, address, and telephone number of the consumer reporting agency, (iii) that the consumer reporting agency did not make the decision to take adverse action and is unable to provide the consumer with specific reasons why the adverse action was taken, and (iv) that the consumer may request a free copy of the report and may dispute with the consumer reporting agency the accuracy or completeness of

the report." (FAC, ¶42). This provision again allows for relaxed procedures for applicants for commercial truck driving positions not applying in person. As with notice and consent, adverse action notice can be oral.

As noted above, the original Complaint alleged that HireRight provided a consumer report that misidentified Bell as having been convicted for felonies and parole violations. (Complaint, ¶11). Bell further alleged that USX determined not to hire him based on this report. (Id., ¶¶12, 14). The FAC contains no similar allegations with respect to Fentress. Perhaps to make this omission less conspicuous, the FAC also removes the allegations regarding Bell. In truth, Fentress *cannot* allege that he was denied employment because of his consumer report as this report, which HireRight also sent to Fentress, contained no such information relating to any criminal convictions. Fentress, then, cannot allege USX ran "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless" by not sending him an adverse action notice. Safeco, 551 U.S. at 69. Accordingly, Count Three should be dismissed as to Fentress.

**D.    Plaintiffs at Most Can Allege a Negligence Claim with Respect to Bell's Adverse Action Notice (Count Four).**

As an alternative to their willful violation claims, Plaintiffs allege negligent violations of the FCRA. While Plaintiffs cite 15 U.S.C. §1681o, which indicates what damages are recoverable for negligent violations, they do not specify the substantive violations alleged. (FAC, ¶46) USX assumes that Plaintiffs base Count Four on the same substantive provisions cited in Counts One through Three. Based on the same reasons discussed above, neither Plaintiff can assert a claim with respect to inadequate disclosure or consent and Fentress cannot assert a claim with respect to adverse action notice. At most, then, Bell may allege a claim of negligence with respect to adverse action notice.

**E.** **Plaintiffs Cannot Qualify for Class Certification Under Rule 23(b) (Counts One, Two, Three, and Four).**

### 1. Plaintiffs' Class Allegations

Plaintiffs seeks to bring each claim on a class basis. For Counts One through Three, Plaintiffs seek statutory damages (of "not less than $100 and not more than $1,000") and punitive damages under 15 U.S.C. § 1681n(a). (FAC, ¶¶35-36, 39-40, 43-44). Plaintiffs forego a request for actual damages for willful violations. See 15 U.S.C. § 1681n(a)(2). For their alternative claim of negligence in Count Four, Plaintiffs request "an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o." (FAC, ¶46). Based on this provision, an "appropriate remedy" could be actual (including compensatory) damages, but not statutory or punitive damages. As to the relevant class period, 15 U.S.C. § 1681p provides that the statute of limitations for FCRA claims can be as little as two years up to as long as five years, depending on if and when a particular plaintiff was on inquiry notice of a possible violation. Plaintiffs here refer to the longest possible period of five years. (FAC, ¶16).

### 2. General Requirements for Class Certification

As the U.S. Supreme Court ruled in Wal-Mart Stores v. Dukes, -- U.S. --, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Id. at 2550 (quotation omitted). Moreover, "[g]iven the huge amount of judicial resources expended by class actions, particular care in their issuance is required." Pipefitters Local 636 Insur. Fund v. Blue Cross Blue Shield of Michigan, -- F.3d --, 2011 WL 3524325, *9 (6th Cir. Aug. 12, 2011) (citing AT & T Mobility v. Concepcion, 563 U.S. --, 131 S.Ct. 1740, 1751, 179 L.Ed.2d 742 (2011)).

To support certification, Plaintiffs must establish the requirements under Rule 23(a) and also "must satisfy at least one of the three requirements listed in Rule 23(b)." Dukes, 131 S.Ct. at 2548. The FAC specifies that Plaintiff seeks certification under Rule 23(b)(3), which may

apply where "questions of law or fact common to the members of the class action predominate over any questions affecting only individual members and ... a class action is superior to other methods for the fair and efficient adjudication of the controversy." (FAC, Prayer for Relief). The requirements of Rule 23(b)(3) are often referred to as predominance (or super-commonality) and superiority. As detailed below, Plaintiffs' money claims and request for a jury trial, as well as individual issues related to the statutory discovery rule, preclude them from alleging a basis for (b)(3) certification.

### 3.   Plaintiffs Cannot Establish a Basis for Class Certification Under 23(b)(3).

### a.   Plaintiff's Money Claims Preclude Rule 23(b)(3) Certification

The Supreme Court has made it clear that individual money damage claims *never* can be certified under Rule 23(b)(1) or (b)(2). <u>Dukes</u>, 131 S.Ct. at 2558. This is not to say that money damage claims *always* can be certified under (b)(3). To the contrary, individual issues arising from money damage claims make the predominance and superiority requirements of (b)(3) anything but "self-evident." <u>Id.</u> at 2558-59.

Plaintiffs here seek to recover punitive and statutory damages for alleged willful violations of the FCRA. In the alternative, for negligent violations they seek an "appropriate remedy," which would be actual damages, including compensatory damages. <u>Godby v. Wells Fargo Bank, N.A.</u>, 599 F.Supp.2d 934, 944 (S.D. Ohio 2008). These damage requests are particularly problematic for class certification purposes. The ruling of the U.S. Court of Appeals for the Fifth Circuit in <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 419 (5th Cir. 1998), was the early leading case discussing the barriers compensatory and punitive damage claims create for class certification. The Sixth Circuit subsequently adopted the <u>Allison</u> analysis in <u>Reeb v. Ohio Dep't of Rehab. and Correction</u>, 435 F.3d 639, 645 (6th Cir. 2006).

While <u>Allison</u> first analyzed the requirements for certification under (b)(2), the individualized issues it noted also prevented certification under (b)(3). "The very nature of [compensatory] damages ... **necessarily** implicates the subjective differences of each plaintiff's circumstances, not class wide remedy .... And because punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and to the compensatory damages awarded to the plaintiffs, recovery of punitive damages must **necessarily** turn on the recovery of compensatory damages. Thus, punitive damages must be determined after proof of liability to individual plaintiffs ...." 151 F.3d at 417-18 (emphasis added). As to the requirements under (b)(3), <u>Allison</u> ruled that compensatory and punitive damages "focus almost entirely on facts and issues specific to individuals rather than the class as a whole: what kind of [statutory violation] was each plaintiff subjected to; how did it affect each plaintiff emotionally and physically, at work and at home; what medical treatment did each plaintiff receive and at what expense; and so on and so on. Under such circumstances, an action conducted nominally as a class action would 'degenerate in practice into multiple lawsuits separately tried.'" <u>Id.</u> at 419 (citation omitted).

Similarly, "[t]he predominance of individual-specific issues relating to ... claims for compensatory and punitive damages . . . detracts from the superiority of the class action device in resolving these claims." <u>Allison</u>, 151 F.3d at 419 (citations omitted). The single-jury requirement of the Seventh Amendment also creates problems. "In order to manage the case, the district court faced the likelihood of bifurcated proceedings before multiple juries. This result in turn increased the probability that successive juries would pass on issues decided by prior ones, introducing potential Seventh Amendment problems and further decreasing the superiority of the class action device." <u>Id.</u> at 419-20 (citations omitted). Finally, because of the substantial recovery and attorney fees available to individual plaintiffs, "the 'most compelling rationale for

finding superiority in a class action – the existence of a negative value suit,' [wa]s missing ...."

Id. at 420 (citing, e.g., Amchem, 521 U.S. at 615).

While the plaintiffs in Reeb did not even attempt to obtain (b)(3) certification, the Sixth Circuit, in adopting Allison, focused on individualized issues that pose problems under both (b)(2) and (b)(3). Thus, Reeb noted that "the presence of claims for individual compensatory and punitive damages were very particularized inquiries that involve considerations of the effect of the defendant's broad policy to an individual's particular circumstances...." 435 F.3d at 648.

As Reeb explained:

> especially with regard to emotional harm and other intangible injuries, plaintiffs must submit proof of actual injury that necessarily differs from person to person because the nature of the injury is the effect on the person as an individual. Furthermore, findings with regard to the availability and amount of punitive damages must be tied to the amount of compensatory damages awarded, so this too turns on individual considerations and is not just a blanket award based on a showing that a defendant's conduct has caused some harm.

Id. (citing Allison, 151 F.3d at 417-18) (citing BMW of N. Am. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)).   Also, efficiencies would not be realized because of the need for individual determinations to calculate damages for each class member.  Id. at 650.  Finally, the ability to recover attorney fees and costs "reduces the risk that these claims would not be brought absent class certification." Id. (citing Coleman v. GMAC, 296 F.3d 443, 448-49 (6th Cir. 2002).

In the wake of the Sixth Circuit's adoption of Allison, courts within the Sixth Circuit have rejected (b)(3) certification based on requests for compensatory and punitive damages. The court in O'Neal v. Wackenhut Services, 2006 WL 1469348, *23 (E.D. Tenn. May 25, 2006), for example, held that the "plaintiffs' demands for punitive damages for each individual plaintiff could not be computed on a group-wide basis." Instead, "[t]he fact-finder would have to hear extensive individualized damages proof throughout a series of mini-trials, deciding first whether punitive damages are appropriate for each individual class member and, if so, in what amount."

Id. The court further ruled that a class action was not a superior method of adjudication since the claims did not involve "negative value suits." Id. (citing Allison, 151 F.3d at 420). See also Mason v. Granholm, 2007 WL 2541769, *4 (E.D. Mich. Aug. 31, 2007) ("Plaintiffs' damages claims are not suitable for certification pursuant to (b)(3)"); Bacon v. Honda of America Mfg., 205 F.R.D. 466, 487 (S.D. Ohio 2001), aff'd, 370 F.3d 565 (6th Cir. 2004) ((b)(3) certification inappropriate "[i]n light of the substantial amount of compensatory and punitive damages potentially recoverable in this case") (both citing Allison).

The court in O'Neal also explained that plaintiffs cannot sidestep these problems by arguing that they only seek damages as a "group benefit." In particular, "a determination of punitive damages would require each plaintiff to demonstrate how the [violation] affected him or her individually. As defendant points out, proof of damages must be related to the harm to the plaintiff. To hold otherwise would violate defendant's rights to due process and would improperly eliminate the jury's discretion to assess punitive damages under the Seventh Amendment." 2006 WL 1469348 at *22 (citing State Farm Mut. Auto. Ins. v. Campbell, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (The "precise award [of punitive damages] in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff."); Cooper Indus. v. Leatherman Tool Group, 532 U.S. 424, 441, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (Courts must examine "the ratio between the size of the award of punitive damages and the harm caused.") and Elkins v. American Showa, 219 F.R.D. 414, 427 (S.D. Ohio 2002) (punitive damages "are not in the nature of a group remedy but are dependent on individual circumstances and are not incidental to the injunctive relief requested.")).

The court in Williams v. Telespectrum, 2007 WL 6787411 (E.D. Va. June 1, 2007), highlighted these same issues in rejecting certification of FCRA claims. As in the case at bar,

the Williams plaintiffs "propose[d] to litigate statutory and punitive damages together on a class-wide basis" and offered to forego actual damages for willful violations. Id. at *6. "However, the amount of punitive damages available against [the defendant] is constrained by the Constitution's Due Process clause." Id. In particular, "'[punitive] damages must bear a reasonable relationship to compensatory damages....'" Id. (quoting Gore, 517 U.S. at 580). The Supreme Court also has ruled "that '[s]ingle-digit multipliers are more likely to comport with due process ....'" Id. (quoting State Farm, 538 U.S. at 425). Statutory damages under the FCRA are capped at $1000. Id. (citing 15 U.S.C. § 1681n(a)(1)(A)). "Meanwhile, the actual damages that would be at issue in any individual litigation vary widely, and in some cases are many times greater than the maximum statutory damages." Id. Thus, "[a]t the class action stage, punitive damages would be measured for due process reasonableness against statutory damages .... However, punitive damages *could* be measured for reasonableness against each plaintiff's individual actual damages, which allegedly range from $2,500 to $40,000 or more per person." Id. (emphasis in original). Moreover, "once punitive damages were imposed (or denied) as to the whole class, claim and issue preclusion would bar individual plaintiffs from re-asserting the same punitive damage claims in their individual cases. Those individual plaintiffs with real, viable claims to actual damages would therefore be precluded from seeking the full range of punitive remedies to which they might be entitled." Id. at *7.

The court in Williams, 2007 WL 6787411, concluded that individual issues relating to actual and compensatory damages "overshadow[ed] the issues common to the class," preventing certification under 23(b)(3). Id. at *7. The plaintiffs also could not establish superiority since "many class members have a significant interest in controlling their own, separate litigation." Id. As the court ruled, "[t]his is especially so as each class member faces different calculations of the strength and size of their claims." Id.

The same problems plague Plaintiff's claims here. To recover actual damages, each individual would need to establish a causal relationship between the FCRA violation and harm suffered. Godby, 599 F.Supp.2d at 944. Even the economic component of actual damages is mired by individual complications. For example, one would need to review the accuracy of each consumer report obtained. See Owner-Operator Indep. Drivers Ass'n v. USIC Commercial Serv., 537 F.3d 1184, 1194 (10th Cir. 2008) (denying certification; "the accuracy of each individual's [consumer report] ... required a particularized inquiry"). Turning to compensatory damages, "'because emotional distress damages are so easy to manufacture ... generalized claims of emotional injury are not enough to establish damages. When the plaintiff's testimony is the only proof of emotional damages, he or she must explain the circumstances of the injury in reasonable detail and cannot simply rely on conclusory statements.'" Godby, 599 F.Supp.2d at 944 (quotation omitted). Further complicating matters, as noted above, Bell has filed a similar class action against Swift Transportation, creating issues of causation and the risk of windfall awards. (See "Exhibit B").

Plaintiffs cannot dodge these problems through "issue certification." (FAC, ¶¶46). The court in Bacon rejected this concept "when there is no foreseeable likelihood that the claims for compensatory and punitive damages could be certified in the class action sought by the plaintiffs." 205 F.R.D. at 487 (quoting Allison, 151 F.3d at 421). Moreover, "bifurcating selected individual issues for class treatment at a later stage of the case to ensure that the common class issues in the case are predominant in the first stage of the case would eviscerate the predominance requirement of Rule 23(b)(3)." Id. (citing Allison, 151 F.3d at 422).

Bacon also rejected a proposal where punitive damages would first be determined and compensatory damages would be addressed in a second proceeding. 205 F.R.D. at 488. For one thing, this approach would run afoul of the Seventh Amendment's single-jury requirement. Id. at

488-89 (citing <u>Allison</u>, 151 F.3d at 423 and cases from five other jurisdictions). Even putting aside these constitutional concerns:

> this court would still conclude that Rule 23(b) class certification would not be the most fair and efficient way to litigate the plaintiff's claims. The litigation of class claims for compensatory and punitive damages in a class action would not result in the accelerated and efficient disposition of the case. Multiple juries would be needed to try the compensatory and punitive damages claims of class members regardless of whether the action proceeds as a class action or as individual actions.

<u>Id.</u> at 489 (citation omitted).

Trying liability and punitive damages in one phase and compensatory damages in a second phase also "would require the defendant to litigate the issue of punitive damages before the issue of compensatory damages has been decided. Unfairness to the defendant would result because the jury deciding the issue of punitive damages would not hear evidence concerning the entitlement of each class member to compensatory damages, which is relevant to the plaintiffs' entitlement to punitive damages." <u>Bacon</u>, 205 F.R.D. at 490 (citing, e.g., <u>Allison</u>, 151 F.3d at 417-19). <u>See also Taylor v. CSX Transp.</u>, 264 F.R.D. 281, 296 (N.D. Ohio 2007) ("A number of district courts in this Circuit … have held that Rule 23(c)(4) [issue certification] does not relieve Plaintiffs of their burden to show predominance under Rule 23(b)(3), and that 'Rule 23(c)(4) may not be used to circumvent the predominance requirement of Rule 23(b)(3).'") (citing, e.g., <u>Snow v. Atofina Chem.</u>, 2006 WL 1008002, *9 (E.D. Mich. March 31, 2006); and <u>Adams v. Federal Materials</u>, 2006 WL 3772065, *7 (W.D. Ky. Dec. 19, 2006)).

In light of all these concerns, a number of courts have ruled that Rule 23(b)(3) certification is inappropriate based on requests for compensatory and punitive damages and a jury trial, without the need for discovery. <u>See Markey v. Louisiana Citizens Fair Plan</u>, 2008 WL 5427708, *4 (E.D. La. Dec. 30, 2008) (granting motion to strike class allegations) (citing five other cases striking class allegations); <u>Saunders v. BellSouth Adver. & Pub. Corp.</u>, 1998 WL

1051961, *1-2 (S.D. Fla. Nov. 10, 1998) (granting motion to dismiss class allegations); Riley v. Compucom Syst., 2000 WL 343189, *3-6 (N.D. Tex. Mar. 31, 2000) (same; discovery not necessary); Adler v. Wallace Computer Serv., 202 F.R.D. 666, 670-74 (N.D. Ga. 2001) (granting motion for summary judgment on class allegations and ruling that discovery was not necessary); McAfee v. Coca-Cola Enterpr., Civ. Action 3:01-CV-2221-N (N.D. Tex. Dec. 6, 2002) (granting motion to dismiss class allegations) (copy attached as "Exhibit E"); Smikle v. Coca-Cola Enterpr., Civ. Action 03-CV-431 (D.N.J. May 17, 2004) (granting motion to dismiss class allegations for compensatory and punitive damages) (copy attached as "Exhibit F"); Barabin v. Aramark Corp., 210 F.R.D. 152, 156 (E.D. Pa. 2002), aff'd, 2003 WL 255417 (3d Cir. Jan. 24, 2003) ("it is apparent from the face of the complaint that class action status cannot be maintained."); Miller v. Hygrade Food Products, 198 F.R.D. 638, 642 (E.D. Pa. 2001) (class certification inappropriate based on the plaintiffs' "prayer for relief" (i.e., the fact that the plaintiffs had requested compensatory and punitive damages)); Reap v. Continental Casualty, 199 F.R.D. 536, 548 (D. N.J. 2001) (certification inappropriate based on a "prayer for relief").

### b.     Statute of Limitations Issues Preclude Rule 23(b)(3) Certification.

A plaintiff may bring an action under the FCRA "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis of such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." See 15 U.S.C. §1681p. Individual issues related to this statutory discovery rule also preclude Plaintiffs from establishing the predominance or superiority requirements under Rule 23(b)(3).

As observed in Willey v. J.P. Morgan Chase, 2009 WL 1938987, *5 (S.D.N.Y. July 7, 2009), "[t]he shorter two year statute runs from the date when [the plaintiff] was on 'inquiry notice' regarding [the defendant's]" alleged violation. Id. at *5. Because "information of sufficient specificity [was] available" to the plaintiff more than two years before he filed his

lawsuit, the court granted the defendant's motion to dismiss.  Id.  Likewise, Bittick v. Experian Inform. Solutions, 419 F.Supp.2d 917 (N.D. Texas 2006), granted a motion to dismiss where the plaintiff waited over two years "after the date of discovery by the plaintiff of the violation" to file an FCRA lawsuit.  Id. at 918.  Similarly, Tilley v. Global Payments, 603 F.Supp.2d 1314 (D. Kan. 2009), granted "defendant's motion for summary judgment as to all of its alleged violations occurring" more than two years before she filed her lawsuit where she had discovered violations outside of that timeframe.  Id. at 1324.

Because Plaintiffs received copies of their consumer reports and learned that they were being denied employment within days after completing their applications, they only can assert a claim dating back two years before they filed this lawsuit.  Moreover, under no circumstances would Plaintiffs be able to assert claims dating back five years on a class basis.  Instead, determination of the applicable limitations period would require analysis of each class member's individual circumstances.  See Thorn v. Jefferson-Pilot Life Insur., 445 F.3d 311, 323 (4th Cir. 2005) (denying 23(b)(3) certification; where actual or constructive knowledge of violation was at issue, "resolution of the statute of limitations defense will similarly require the trier of fact to examine the particular circumstances of each individual class member."); Doll v. Chicago Title Insur., 246 F.R.D. 683, 687 (D. Kan. 2007) (same; "Application of the statute of limitations and the discovery rule involves the consideration of facts unique to each class member."); Fisher v. Ciba Specialty Chemicals, 238 F.R.D. 273, 310 (S.D. Ala. 2006) (same; "Courts have found that disparate, individualized assessment of a statute of limitations issue may cause individual considerations to predominate under Rule 23(b)(3)."); LaBauve v. Olin Corp., 231 F.R.D. 632 (S.D. Ala. 2005) (same; "Only after painstaking factfinding on a plaintiff-by-plaintiff basis will each plaintiff's status vis a vis the statute of limitations defense be ascertainable.").

Viewing the complications created by Plaintiffs' damages requests and the statutory discovery rule together, it becomes clear that common issues would not predominate. Indeed, Plaintiffs' claims involve particularly complex individualized inquiries. For example, the claim of each class member would involve questions such as (1) when an alleged violation occurred, (2) whether, and when, the individual was on inquiry notice of a possible violation, (3) what written or electronic notice the individual received that USX may obtain a consumer report, (4) what oral notice the individual received, (3) what written or electronic consent was obtained from the individual, (4) what oral consent was obtained from the individual, (5) what information was in the individual's report, (6) whether this information was accurate, (7) whether USX declined to hire the individual based in whole or in part on information in the report, (8) what written or electronic notice the individual received related to this employment decision and when he or she received it, (9) what oral notice the individual received and when he or she received it, (10) whether, and when, the individual received a copy of his or her report, (11) whether the individual received notice and the same report from another employer, (12) whether the individual took any action to correct the report, (13) whether USX would have declined to hire the individual based on accurate information in the report, or based on information from sources other than the report, (14) whether USX ran a risk of violating the FCRA substantially greater than that associated with a careless reading of the statue, (15) whether USX was negligent, (16) whether statutory damages apply and, if so, in what amount, (17) what economic injury the individual suffered, (18) what emotional injury the individual suffered, including considering medical evidence, (19) what the individual did to mitigate damages, (20) whether damages may have been caused by other sources, (21) whether the individual has recovered all or a portion of these damages through other claims, (22) whether punitive damages are available for the

individual, and in what amount, (23) whether statutory or punitive damages violate USX's due process rights, and (24) what other relief may be appropriate.

Finally, Plaintiffs cannot show that a class action would be the superior means of adjudication. Consider the claim of an applicant who experienced willful violations resulting in denial of employment five years ago and who was not on inquiry notice of these violations. This individual would have a strong personal interest in controlling a separate action in which he or she could recover five years of lost wages, compensatory damages, punitive damages (based on a multiplier of actual damages) and attorney fees. By contrast, in Plaintiffs' proposed litigation approach, any actual damages for a willful violation would be sacrificed, punitive damages could not be obtained on a class basis or in a ratio taking into account the individual's substantial actual damages, and the applicant's claim would be time-barred because the statutory discovery rule cannot be applied on a class basis.

### III.     CONCLUSION

Based on the analysis outlined above, USX respectfully requests that its Motion to Dismiss be GRANTED.

Respectfully submitted,

**MILLER & MARTIN PLLC**

By: *s/ Roger W. Dickson*
   Roger W. Dickson (BPR No. 01933)
   Bradford G. Harvey (BPR No. 17393)
   Alison B. Martin (BPR No. 22366)
1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-6600
Facsimile: (423) 785-8480

***Attorneys for Defendant U.S. Xpress, Inc.***

# CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Michael Schmitt, Esq.
ORTALE, KELLEY, HERBERT & CRAWFORD
200 Fourth Avenue North
P.O. Box 198985
Nashville, TN 37219-8985

Matthew A. Dooley, Esq.
Dennis M. O'Toole, Esq.
Anthony R. Pecora, Esq.
STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA
5455 Detroit Road
Sheffield Village, OH 44054

**MILLER & MARTIN PLLC**

By: _s/ Roger W. Dickson_ _____