<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

NICOLA SMIKLE, et al.,            :
                                  :
              Plaintiffs,         :
                                  :
       v.                         :        Civil No. 03-0431 (RBK)
                                  :
                                  :
COCA-COLA ENTERPRISES, INC.,      :
                                  :
                                  :
              Defendant.          :
_____ :

Appearances:

Nicole M. Miles, Esq.
TRUJILLO RODRIGUEZ & RICHARDS, LLP
8 Kings Highway West
Haddonfield, NJ 08033
Attorney for Plaintiffs

Paulette Brown, Esq.
DUANE MORRIS, LLP
744 Broad Street, Suite 1200
Newark, NJ 07102
Attorney for Defendant

O P I N I O N

**Kugler**, United States District Judge:

In this Title VII employment discrimination action,
Defendant Coca-Cola Enterprises, Inc. ("CCE") moves to strike
class action allegations.  Plaintiffs, four African-Americans
employed by CCE and its subsidiaries, assert violations of the

**EXHIBIT**
**F**

Civil Rights Act of 1866, 42 U.S.C. § 1981, ("Section 1981"),
Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C.
§ 2000e et seq., and the Civil Rights Act of 1991, 42 U.S.C. §
1981a.[1]  They seek to represent a class of "all African-Americans
employed by CCE throughout the United States as Route-Assigned
Personnel at any time from August 1, 1999 to the first day of
trial in this matter," pursuant to Rule 23(b)(2) or Rule 23(b)(3)
of the Federal Rules of Civil Procedure.  For the reasons
expressed below, the Court grants CCE's motion to strike.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court accepts the factual allegations in the Complaint
as true for purposes of this motion.  Plaintiffs Nicola Smikle,
Kevin Lewis, Henry Nelson Crews and John Holloman are African-
Americans employed by Defendant CCE as "Route-Assigned
Personnel."  Route Assigned Personnel is defined in the Complaint
as "all persons currently and formerly employed by CCE throughout
the United States in route-specific positions engaged in the
selling, distributing or stocking of Coca-Cola products, which
positions are otherwise known as account managers, merchandisers,
delivery drivers and/or Retail Account Representatives,
regardless of the job title and designation used."  (Compl. ¶12.)

---

[1]     The Court has original jurisdiction pursuant to 28
U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).  The
Complaint states that the named Plaintiffs have exhausted their
administrative remedies in accordance with 42 U.S.C. § 2000e-
5(f)(1).  (Compl. ¶11.)

Plaintiffs assert claims of disparate treatment and disparate impact discrimination on the basis of race in violation of Section 1981 and Title VII.  They seek to represent a class consisting of "all African-Americans employed by CCE throughout the United States as Route-Assigned Personnel at any time from August 1, 1999 to the first day of trial in this matter ('the Class Period')."  (Id. ¶12.)

A.   Allegations of Named Plaintiffs

Plaintiff Nicola Smikle resides in Plainfield, New Jersey. (Id. ¶6.)  She was hired in 2001 by CCE as an Account Manager Trainee and worked at its distribution facility in Capital Heights, Maryland.  (Id.)  She currently works as an Account Service Manager at CCE's distribution facility in New Brunswick, New Jersey.  (Id.)  Plaintiff Kevin Lewis resides in Stockbridge, Georgia.  (Id. ¶7.)  He was hired in 1988 by CCE as a Driver and currently works in that capacity at its Atlanta/South-Metro distribution facility in Atlanta, Georgia.  (Id.)  Plaintiff Henry Nelson Crews resides in Upper Marlboro, Maryland.  (Id. ¶8.)  He was hired in 1988 by CCE as a Warehouse Make-up Builder. (Id.)  He currently works as a Driver at CCE's distribution facility in Capital Heights, Maryland.  (Id.)  Lastly, Plaintiff John Holloman resides in Hyattsville, Maryland.  (Id. ¶9.)  He was hired in 1998 by CCE as a Driver and currently works in that capacity at its distribution facility in Capital Heights,

3

Maryland.   (Id.)

The named Plaintiffs aver that CCE assigned them to
Undesirable Routes[2] as that term is defined in the Complaint,
that CCE did not assign white Route-Assigned Personnel working
out of the same distribution centers to Undesirable Routes, that
as a result of being assigned to Undesirable Routes, the named
Plaintiffs have been required to perform more demanding job
duties and have encountered delivery risks and other
disadvantages that are not normally encountered on other CCE
routes, that while assigned to these Undesirable Routes the named
Plaintiffs received lower compensation than that of white Route-
Assigned Personnel who were assigned to other routes, and that
despite the named Plaintiffs' qualifications and consistently
high level performance, CCE has denied them promotions and other
selections that CCE afforded to similarly situated white Route-
Assigned Personnel.   (Id. ¶¶ 21-40.)

   B.   Class Action Allegations

   During the class period, CCE "has maintained a system for

---

[2]   Undesirable Routes are defined as those "areas where
the residents are predominately people of color and/or where the
outlets have lower sales volumes as compared to other CCE
routes," and that adversely affect Plaintiffs' compensation.
(Compl. ¶14.)   Plaintiff Nicola Smikle alleges that she was
assigned to Undesirable Routes "throughout large portions of her
employment at CCE."   (Id. ¶21.)   Plaintiffs Kevin Lewis, Henry
Nelson Crews and John Holloman allege they were assigned to
Undesirable Routes throughout their employment at CCE.   (Id. ¶¶
26, 31, 36.)

making promotions and other selection decisions concerning Route-Assigned Personnel that is excessively subjective and which has operated to deny qualified African-American employees opportunities for advancement because of their race." (Id. ¶13.) In addition, CCE "has assigned African-American employees in Route-Assigned Personnel positions to routes in areas where the residents are predominately people of color and/or where the outlets have lower sales volumes as compared to other CCE routes ('the Undesirable Routes'), adversely affecting their compensation." (Id. ¶14.)

Plaintiffs allege the proposed class is properly maintainable under Fed. R. Civ. P. 23(a) because the members of the class are sufficiently numerous to make joinder impracticable, the named Plaintiffs' claims raise questions of law or fact common to the class, the named Plaintiffs' claims are typical to those advanced by the class, and the named Plaintiffs and their counsel will properly represent the interests of the class and its members. (Id. ¶¶15-19.) The Complaint sets forth six questions of law or fact common to the named Plaintiffs' claims and those of the putative class members, including (1) whether CCE's system for making promotions and other selections is excessively subjective; (2) whether this excessive subjectivity has had a disparate impact on African-American employees in violation of Title VII; (3) whether CCE managers and

5

supervisors have engaged in a pattern and practice of denying promotions and other selections to qualified African-American employees in violation of Title VII and the Civil Rights Act of 1866; (4) whether CCE intentionally uses race as a motivating factor in making promotion decisions in violation of Title VII and the Civil Rights Act of 1866; (5) whether CCE assigns delivery routes to its Route-Assigned Personnel on the basis of race; and (6) whether CCE's route assignment process adversely affects the compensation of African-American employees in violation of Title VII.  (Id. ¶17a-f.)

Plaintiffs allege the class is properly maintainable under Fed. R. Civ. P. 23(b)(2) because "CCE has acted on grounds generally applicable to the Class, making appropriate final injunctive relief or declaratory relief with respect to the entire Class."  (Id. ¶20.)  Plaintiffs also allege the class is properly maintainable under Fed. R. Civ. P. 23(b)(3) because "the questions of law and fact common to members of the Class predominate over questions affecting individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy."  (Id.)

C.   Prayer for Relief

In the ad damnum clause of the Complaint, Plaintiffs seek injunctive and declaratory relief, requesting the Court to (1) declare that CCE unlawfully has engaged in the discriminatory

6

practices alleged in the Complaint; (2) issue a permanent
injunction prohibiting CCE, its subsidiaries, officers, agents,
employees and successors, from engaging in the discriminatory
employment practices alleged in the Complaint; and (3) issue a
permanent mandatory injunction requiring CCE to adopt employment
practices in conformity with the requirements of Title VII and
Section 1981.  Plaintiffs also demand for a trial by jury and
seek monetary damages, including back pay, front pay and other
job benefits sufficient to make Plaintiffs and the class whole,
compensatory and punitive damages, attorneys' fees and costs of
suit.

## II.  DISCUSSION

### A.   Standard of Review

The instant matter does not come before the Court on a
motion by Plaintiffs for class certification, but instead on a
motion to strike class action allegations based on the face of
the complaint.  The Third Circuit has stated that "[i]n reviewing
a motion for class certification, a preliminary inquiry into the
merits is sometimes necessary to determine whether the alleged
claims can be properly resolved as a class action."  Newton v.
Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168
(3d Cir. 2001).  By contrast, when evaluating a motion to strike,
the Court must accept as true all factual allegations in the
complaint and view all reasonable inferences in the light most

7

favorable to the plaintiff.   Cf. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   The Court is not required, however, to accept legal conclusions in the complaint whether those conclusions are directly stated or "draped in the guise of factual allegations." In re Rockefeller Ctr. Props., Inc. Sec. Litg., 311 F.3d 198, 216 (3d Cir. 2002).

CCE contends the Court should strike the class action allegations because it is apparent from the face of the Complaint that Plaintiffs cannot maintain a class action under Rule 23(b)(2) or 23(b)(3) of the Federal Rules of Civil Procedure where they seek compensatory and punitive damages and demand a trial by jury on behalf of each class member.   It cites numerous Title VII cases in this jurisdiction that have stricken class action allegations when the complaint, on its face, demonstrates that a class is not maintainable under 23(b)(2) or 23(b)(3) based on the plaintiffs' request for compensatory and punitive damages and demand for a trial by jury.   Characterizing CCE's motion as an attempt to "preempt the development of a record and briefing on class certification," Plaintiffs urge the Court to defer its decision as to whether a class action is maintainable pending completion of discovery or at the very least until the parties have had an opportunity to conduct some discovery.   They note that the cases relied on by CCE are distinguishable because the plaintiffs in those cases either had the benefit of class

8

discovery or had elected to forego discovery and moved for class certification. Moreover, "parties are routinely afforded the opportunity to conduct discovery prior to addressing class certification to ensure that the nature of the claims and likely defenses are susceptible to class treatment." Consequently, Plaintiffs argue that "CCE has failed to justify the highly unusual, peremptory treatment that it asks the Court to give to class certification."

While the Court may not delve beyond the pleadings to determine the merits of Plaintiffs' claims, it may strike class action allegations "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."[3] Clark v. McDonald's Corp., 213 F.R.D. 198, 226 n.3 (D.N.J. 2003); see, e.g., Barabin v. Aramark Corp., 210 F.R.D. 152, 161-62 (E.D.

---

[3]      Plaintiffs cite Abdallah v. Coca-Cola Co., 1999 WL 527835 (N.D. Ga. July 16, 1999), in which the court determined that dismissal of class action allegations in a Title VII complaint in the absence of any discovery was inappropriate because it did not appear beyond doubt that the plaintiffs could prove no set of facts in support of their claims which would entitle them to relief. Id. at *1 (suggesting a hybrid class might be maintainable under Rule 23(b)). Like the defendants in Abdallah, Plaintiffs argue that CCE has failed to demonstrate that Plaintiffs' claims could never be susceptible to class certification and that the parties should be afforded the opportunity to conduct discovery. This Court declines to follow Abdallah on two grounds. First, Abdallah is an unpublished Order in a foreign jurisdiction that is not binding on this Court. Second, courts should not needlessly prolong a determination of whether a class may be certified where, as here, no amount of discovery would cure Plaintiffs' ability to maintain a class under Rule 23(b) based on the relief sought and the accompanying factual allegations in the Complaint.

9

Pa. 2002) (granting defendants' motion to strike on grounds that it was apparent from the face of the complaint that Title VII class action seeking compensatory and punitive damages could not be maintained under 23(b)(2) or 23(b)(3)), petition for interlocutory appeal denied, 2003 WL 355417 (3d Cir. 2003); Miller v. Hygrade Food Prods. Corp., 198 F.R.D. 638, 642-44 (E.D. Pa. 2001) (concluding that class certification was inappropriate under Rule 23(b) where Title VII complaint sought compensatory and punitive damages and demanded jury trial); Reap v. Cont'l Cas. Co., 199 F.R.D. 536, 548-50 (D.N.J. 2001) (same); Thompson v. Merck & Co., Inc., 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (granting defendants' motion to strike because it was "clear from the allegations in the complaint" that plaintiffs' claims could not satisfy requirements of Rule 23(b)(2) or (b)(3) and noting that additional discovery would "in all likelihood further illuminate the subjective and intangible differences of each class member's individual circumstances"); but see Taylor v. Dist. of Columbia Water & Sewer Auth., 205 F.R.D. 43, 52 (D.C. 2002) (stating that whether plaintiff in Title VII action "will obtain class certification depends upon further factual development of his claims, but cannot be decided as a matter of law prior to discovery and the filing of a motion for class certification"); Hoffman v. Honda of Am. Mfg., Inc., 191 F.R.D. 530, 536-37 (S.D. Ohio 1999) (holding that plaintiffs' request

for compensatory and punitive damages does not, as a matter of law, preclude class certification). Rule 23(c) of the Federal Rules of Civil Procedure requires a court to determine, as early in the proceedings as practicable, whether an action can be certified as a class action. Consistent with that rule, the Court rejects Plaintiffs' argument that in the absence of discovery the Court cannot or should not determine whether a class action could be maintainable based on the face of the Complaint.

B.   Title VII Claims & Civil Rights Act of 1991

A preliminary discussion of the elements and evidentiary requirements for Title VII disparate impact and disparate treatment claims, along with the changes in both the procedures and remedies made available to Title VII claimants through the enactment of the Civil Rights Act of 1991, serves as a useful backdrop for the Court's analysis on whether Plaintiffs' Title VII claims are maintainable as a class action under Rule 23(b)(2) or (b)(3) based on the allegations in the Complaint.

1.   Title VII Claims

Plaintiffs assert two separate and distinct theories of liability under Title VII: disparate impact and disparate treatment discrimination. "A disparate impact violation is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing a substantial adverse

11

impact on a protected group, and which cannot be justified as serving a legitimate business goal of the employer." EEOC v. Metal Serv. Co., 892 F.2d 341, 346 (3d Cir. 1990); Lanning v. SEPTA, 181 F.3d 478, 485 (3d Cir. 1999) ("Under Title VII's disparate impact theory of liability, plaintiffs establish a prima facie case of disparate impact by demonstrating that application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern."). Under this theory of liability, the plaintiff need not prove intentional discrimination. Metal Serv., 892 F.2d at 346-47. Disparate impact claims involve three stages of proof. First, plaintiffs must demonstrate by a preponderance of the evidence that the employer "'uses a particular employment practice that causes a disparate impact on the basis of race . . . .'" Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 160 (2nd Cir. 2001)(citing 42 U.S.C. § 2000e-2(k)(1)(A)(i)). Statistical proof "of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity" typically occupy "center stage in a prima facie showing of a disparate impact claim." Id. Next, if plaintiffs establish a prima facie case, the burden of persuasion shifts to the defendant to demonstrate either that plaintiffs' statistical analysis is invalid or that the challenged practice or policy is "'job related for the position in question and consistent with business

12

necessity.'" Id. at 161 (quoting 42 U.S.C. § 2000e-
2(k)(1)(A)(i)). Finally, if the defendant can demonstrate a
business justification for the policy or practice, "the burden of
persuasion shifts back to the plaintiffs to establish the
availability of an alternative policy or practice that would also
satisfy the asserted business necessity, but would do so without
producing the disparate effect." Id.

     In contrast, "[a] disparate treatment violation is made out
when an individual of a protected group is shown to have been
singled out and treated less favorably than others similarly
situated on the basis of an impermissible criterion under Title
VII." Metal Serv., 892 F.2d at 347. Thus, unlike the disparate
impact theory, proof of the employer's discriminatory motive –
through direct or indirect circumstantial evidence – is critical
for establishing a disparate treatment claim. Id. "[A] company
engages in a pattern or practice of discrimination when it
systematically engages in intentional discrimination against a
protected group, or in other words, when it maintains a regular,
corporate policy of purposeful discrimination in some aspect of
its employment practices." Sperling v. Hoffmann-La Roche, Inc.,
924 F. Supp. 1346, 1358 (D.N.J. 1996). Ordinarily, pattern or
practice suits are handled in two phases: liability and remedial.
Robinson, 267 F.3d at 158; Allison v. Citgo Petroleum Corp., 151
F.3d 402, 409 (5th 1998). The liability phase requires the

13

plaintiffs to prove a pattern or practice of invidious class-based discrimination. <u>Allison</u>, 151 F.3d at 409. If the plaintiff successfully proves a pattern or practice of discrimination, the court may proceed to fashion class-wide injunctive relief. <u>Dillon v. Coles</u>, 746 F.2d 998, 1004 (3d Cir. 1984). "If individual relief such as back pay, front pay, or compensatory recovery is sought in addition to class-wide injunctive relief, the court must conduct the 'remedial' phase." <u>Robinson</u>, 267 F.3d at 159. During the remedial phase, class members enjoy the presumption "'that any particular employment decision, during the period in which the discriminatory policy was in force, was made pursuit of that policy.'" <u>Id.</u> (quoting <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 362 (1977)). Thus, a class member "need only show that he or she suffered an adverse employment decision 'and therefore was a potential victim of the proved [class-wide] discrimination.'" <u>Id.</u> (quoting <u>Teamsters</u>, 431 U.S. at 362). If successful, the burden then shifts to the employer to demonstrate that those class members were denied employment opportunities for legitimate reasons. <u>Allison</u>, 151 F.3d at 409. "If the employer is unable to establish a lawful reason for an adverse employment action, the employee is entitled to individualized equitable relief, which may include back pay and front pay. Class members who seek compensatory damages in addition to individualized equitable

14

relief must then prove that the discrimination caused them 'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, [or] other nonpecuniary losses.'" Robinson, 267 F.3d at 160 (quoting 42 U.S.C. § 1981a(b)(3)).

### 2. Civil Rights Act of 1991

Prior to the passage of the Civil Rights Act of 1991, a plaintiff seeking monetary damages for disparate treatment and disparate impact could recover only back pay and front pay based on the historical recognition that those remedies constitute equitable relief. See Kolstad v. Dental Ass'n, 527 U.S. 526, 533-34 (1999). In addition, neither party was entitled to a jury trial. The advent of the 1991 Act changed the remedial scheme for disparate treatment claims but not for disparate impact cases. Id. at 534. In addition to recovery of back pay and front pay, the Act authorizes compensatory and punitive damages in disparate treatment disputes, 42 U.S.C. § 1981a(a)(1), and affords either party the right to demand for a jury trial where compensatory and punitive damages are sought, 42 U.S.C. § 1981a(c). Compensatory damages include relief for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." § 1981a(b)(3). Plaintiffs may recover punitive damages if the employer discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved

individual." § 1981a(b)(1).  Finally, the Act caps the maximum
recovery of compensatory and punitive damages for each plaintiff
at $300,000.  § 1981a(b)(3).

    C.  Standards for Class Action Certification

    In order to be certified, a class must satisfy all four
requirements set forth in Rule 23(a) as well as one of the
categories enumerated in Rule 23(b).  Amchem Prods., Inc. v.
Windsor, 521 U.S. 591, 614-15 (1997).  Rule 23 provides, in
relevant part, that:

> **(a) Prerequisites to a Class Action.** One or
> more members of a class may sue or be sued as
> representative parties on behalf of all only
> if (1) the class is so numerous that joinder
> of all members is impracticable, (2) there
> are questions of law or fact common to the
> class, (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class, and (4) the
> representative parties will fairly and
> adequately protect the interests of the
> class.
>
> **(b) Class Actions Maintainable.** An action may
> be maintained as a class action if the
> prerequisites of subdivision (a) are
> satisfied, and in addition:
> . . . .
>
> (2) the party opposing the class has acted or
> refused to act on grounds generally
> applicable to the class, thereby making
> appropriate final injunctive relief or
> corresponding declaratory relief with respect
> to the class as a whole; or
> (3) the court finds that the questions of law
> or fact common to the members of the class
> predominate over any questions affecting only
> individual members, and that a class action
> is superior to other available methods for

the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23. Plaintiffs allege the class meets the four requirements set forth in 23(a) and is properly maintainable under Rule 23(b)(2) or 23(b)(3).

    1.   Rule 23(b)(2)

Certification under Fed. R. Civ. P. 23(b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); Barnes v. Am. Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998). Although Rule 23(b)(2) does not expressly discuss whether and to what extent monetary relief may be sought in conjunction with injunctive or declaratory relief, the Advisory Committee Notes on Rule 23 state that (b)(2) certification "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Fed. R. Civ. 23 advisory committee's note (emphasis added).

17

Prior to the enactment of the Civil Rights Act of 1991, courts routinely certified class actions in Title VII cases because recovery under a disparate impact or pattern and practice theory of discrimination was limited to injunctive, declaratory and equitable relief (typically in the form of back and front pay). See Reap, 199 F.R.D. at 546; Miller, 198 F.R.D. at 640; see generally Barnes, 161 F.3d at 142 (noting "[t]he (b)(2) class 'serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment'") (quoting Baby Neal v. Casey, 43 F.3d 48, 58-59 (3d Cir. 1994)). However, subsequent to the passage of the Act, which, as noted above, authorizes compensatory and punitive damages in disparate treatment cases and affords either party the right to demand for a jury trial where compensatory and punitive damages are sought, courts have diverged as to the appropriate standard for determining when money damages "predominate" so as to preclude (b)(2) certification. Two different standards have emerged post-1991 Civil Rights Act, one articulated by the United States Court of Appeals for the Fifth Circuit, Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998), and another by the Second Circuit, Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2d Cir. 2001), cert. denied, 535 U.S. 951 (2002).

The Fifth Circuit has announced a test whereby "monetary relief predominates in (b)(2) class actions unless it is

18

incidental to requested injunctive or declaratory relief."
<u>Allison</u>, 151 F.3d at 415.  Incidental damages are those "that
flow directly from liability to class <u>as a whole</u> on the claims
forming the basis of the injunctive or declaratory relief."  <u>Id.</u>
Elaborating further on the concept of incidental damages, the
court explained that incidental damages are those to which class
members automatically would be entitled once liability to the
class (or subclass) as a whole is established, are capable of
computation by means of objective standards and not dependent in
any significant way on the intangible, subjective differences of
each class member's circumstances, and neither introduce new and
substantial legal or factual issues, nor entail complex
individualized determinations.  <u>Id.</u>  As a practical matter, the
court recognized the impossibility of devising a precise formula
for determining when a given monetary claim qualifies as
incidental damages, and therefore concluded that "district
courts, in the exercise of their discretion, are in the best
position to assess whether a monetary remedy is sufficiently
incidental to a claim for injunctive or declaratory relief to be
appropriate in a (b)(2) class action."  <u>Id.</u> at 416.

The Second Circuit has expressly rejected the Fifth
Circuit's test, explaining that "when presented with a motion for
(b)(2) class certification of a claim seeking both injunctive
relief and non-incidental monetary damages, a district court must

consider the evidence presented at a class certification hearing
and the arguments of counsel, and then assess whether (b)(2)
certification is appropriate in light of the relative importance
of the remedies sought, given all of the facts and circumstances
of the case." Robinson, 267 F.3d at 164 (quotation and citations
omitted). Additionally, the district court "may allow (b)(2)
certification if it finds in its informed, sound judicial
discretion that (1) the positive weight or value to the
plaintiffs of the injunctive or declaratory relief sought is
predominant even though compensatory or punitive damages are also
claimed, and (2) class treatment would be efficient and
manageable, thereby achieving an appreciable measure of judicial
economy." Id. (quotation and citations omitted). While
recognizing that the assessment of whether injunctive or
declaratory relief predominates requires "an ad hoc balancing
that will vary from case to case," the court nonetheless
instructed district courts to ensure, at a minimum, before
allowing (b)(2) certification that: "(1) even in the absence of a
possible monetary recovery, reasonable plaintiffs would bring the
suit to obtain the injunctive or declaratory relief sought; and
(2) the injunctive or declaratory relief sought would be both
reasonably necessary and appropriate were the plaintiffs to
succeed on the merits.  Insignificant or sham requests for
injunctive relief should not provide cover for (b)(2)

20

certification of claims that are brought essentially for monetary recovery." Id. (internal quotation and citations omitted).

As the parties correctly point out, the United States Court of Appeals for the Third Circuit has not provided clear guidance as to whether it would follow the test announced in Allison or Robinson.  Not surprisingly, CCE argues that the Court should follow Allison, whereas Plaintiffs urge the Court to follow the approach in Robinson.  Having reviewed the different standards articulated by the well-reasoned decisions of Allison and Robinson, respectively, this Court adopts the Allison test and concludes that class certification under 23(b)(2) is inappropriate where the individualized nature of the proofs associated with recovery of compensatory and punitive damages render the monetary relief sought by each class member non-incidental to the injunctive or declaratory relief sought by the class as a whole.  Several district courts in this jurisdiction as well as the Third Circuit, albeit in an unpublished decision, have endorsed the Allison test for reasons this Court views as sound and consonant with the fair, efficient, and effective administration of justice to all interested parties and of the use of judicial resources.  Barabin, 210 F.R.D. at 160-62; Miller, 198 F.R.D. at 641-42; Reap, 199 F.R.D. at 547-50; Barabin, 2003 WL 255417, at *1-2; Thompson, 2004 WL 62710, at *3-5; see also Murray v. Auslander, 244 F.3d 807, 812 (11th Cir.

2001); <u>Lemon v. Int'l Union of Operating Eng'rs, Local No. 139</u>,
216 F.3d 577, 580-81 (7th Cir. 2000).

In <u>Miller v. Hygrade Food Prods. Corp.</u>, the plaintiffs filed
suit on behalf of African-American employees and applicants for
employment alleging "across the board" racial discrimination in
the areas of discipline, termination, compensation, training,
work assignment, hiring of temporary employees, and promotions.
198 F.R.D. at 639.  The plaintiffs also alleged that they were
subjected to a hostile work environment.  <u>Id.</u>  Adopting the test
announced in <u>Allison</u>, the court found that calculating
compensatory and punitive damages could not be assessed by
objective standards and would require individual hearings.  <u>Id.</u>
at 641-42.  Noting that the plaintiffs had not alleged the
discriminatory practices had affected each worker in the same
manner, the court explained that "subjective standards will apply
as the putative class includes individuals employed in different
divisions, under different supervisors, for varying durations of
time over a seven year period."  <u>Id.</u> at 642.  Based on those
concerns, the court concluded that monetary relief predominated,
and therefore, precluded class certification under Rule 23(b)(2).
<u>Id.</u>

Similarly, in <u>Reap v. Continental Cas. Co.</u>, the plaintiff,
individually and on behalf of a class of female employees over
the age of forty, alleged disparate treatment by the employer's

22

managers and supervisors in decisions relating to the conditions
and employment of women in higher job classifications in its
workforce.  199 F.R.D. at 538-39.  The employer opposed the
plaintiff's motion for class certification, arguing, among other
things, the named plaintiff had failed to present any evidence
that she or the class which she sought to represent was subjected
to a common set of discriminatory employment practices, or that
the individualized nature of proof would not predominate over any
questions of law or fact common to the members of the class.  Id.
at 539.  Mirroring the court's analysis in Miller, the Reap Court
applied the Allison test and found the plaintiff's prayer for
relief, which included compensatory and punitive damages, could
not be assessed by objective standards and would require
individual hearings.  Id. at 548.  The court noted that the
plaintiff did not allege that each class member was affected by
the alleged discriminatory practices in the same manner, but
rather, the claims concerned "across-the-board discrimination" in
areas of salaries, benefits, merit increases, work assignments,
training, performance evaluations, promotions, discipline,
lay-offs, terminations, and retaliation.  Id.  Thus, because
calculating compensatory and punitive damages, as opposed to
simply back pay or front pay, for thousands of class members
would require individualized proof of discrimination and actual
injury, the court concluded monetary relief predominated, and

23

therefore, precluded certification under Rule 23(b)(2).   <u>Id.</u>

In <u>Barabin v. Aramark Corp.</u>, the plaintiffs, African Americans, filed suit alleging they were "subjected to frequent harassment and unjustified disciplinary actions by Caucasian supervisors not imposed on similarly situated Caucasian employees" in violation of Title VII and Section 1981.   210 F.R.D. at 156.   They sought injunctive and declaratory relief as well as monetary damages.   In determining whether monetary relief predominated, the <u>Barabin</u> Court adopted the test set forth in <u>Allison</u>.   In reviewing the allegations in the complaint, the court observed the primary relief sought by the plaintiffs was monetary in nature and noted the request for injunctive and declaratory relief was "secondary at best."   <u>Id.</u> at 161.   The plaintiffs did not claim that damages could be computed on the basis of some "objective, uniform calculation or in an amount which naturally follows from an entitlement to a declaration or injunction against further harm."   <u>Id.</u>   Rather, in lieu of a claim for damages that automatically flow directly to the class as a whole, the plaintiffs claimed that they had been "damaged in an amount to be proven at trial," requiring individualized proof of actual harm by each plaintiff before a jury.   <u>Id.</u>   The court therefore concluded that the plaintiffs did not meet the requirements for class action certification under 23(b)(2).

In an unpublished decision, the Third Circuit denied the

24

plaintiffs' petition for interlocutory appeal under Rule 23(f).
Barabin, 2003 WL 355417, at *3.  The court first stated that
"where parties seek monetary relief, a court may only certify a
class [under (b)(2)] if the damages claim is incidental to the
primary claim for injunctive or declaratory relief."  Id. at *1.
In that regard, it briefly explained that "[b]ecause unnamed
members of classes certified under Rule 23(b)(2) cannot opt out
(as under Rule 23(b)(3)), class cohesion is necessary, and is
presumed where a class suffers from a common injury and seeks
class-wide injunctive relief."  Id.  On the other hand, "[w]here
monetary relief is requested, cohesion is less apparent, as
awarding damages normally entails examination of individual
claims."  Id.  Next, the court cited with approval the test
announced in Allison that "a court may only certify a class if
the damages claim is incidental to the primary claim for
injunctive or declaratory relief."  Id. at *1-2.  The court then
cited at length, and found no error with, the district court's
decision that monetary relief predominated, and therefore,
precluded certification under Rule 23(b)(2).  Id. at *2.

Plaintiffs contend that seeking compensatory and punitive
damages does not, as a matter of law, preclude them from
maintaining a class action under 23(b)(2) or 23(b)(3).  As to
punitive damages, Plaintiffs assert that these damages can be
awarded as a class-wide remedy, eliminating any concern that such

25

an award would require individualized inquiries of fact as to each class member.  They argue that punitive damages "would be especially well suited to a single award to the class" because such an award is intended to punish and deter a defendant's misconduct rather than compensate each victim for their injuries. As to compensatory damages, Plaintiffs assert that computing an award as to each class member "need not constitute an elaborate, highly-individualized inquiry that concerned the Fifth Circuit in Allison."  Specifically, Plaintiffs note that expert testimony is not required in this Circuit to corroborate a claim for emotional distress, see Bolden v. SEPTA, 21 F.3d 29, 34 (3d Cir. 1994), and that unlike the cases relied on by CCE, "where the plaintiffs assailed a potpourri of employment practices, ranging from discipline, hostile work environment and hiring to termination and retaliation, that would have required litigation over numerous individualized decisions across the entire spectrum of personnel practices," this action "challenges only two discrete practices – discriminatory route assignments and a discriminatory promotion system."  CCE argues that Plaintiffs' requests for compensatory and punitive damages necessarily involve individualized inquiries as to each putative class member's injuries, and, that barring Plaintiffs' willingness to forego their request for compensatory and punitive damages, no amount of discovery would change this result.

26

Consistent with the reasoning of <u>Allison</u>, <u>Barabin</u>, <u>Miller</u> and <u>Reap</u>, class certification under (b)(2) is inappropriate where the monetary damages sought by each class member in the Complaint would predominate over the injunctive and declaratory relief sought by the class as a whole.  The Third Circuit has emphasized that "a 23(b)(2) class must be cohesive" and that district courts have the discretion to deny certification in Rule 23(b)(2) cases "in the presence of 'disparate factual circumstances.'"  <u>Barnes</u>, 161 F.3d at 143 (quoting <u>Geraghty v. United States Parole Comm'n</u>, 719 F.2d 1199, 1205-06 (3d Cir. 1983)).  This is so because in a (b)(2) class action, "unnamed class members are bound by the action without the opportunity to opt out."  <u>Id.</u> at 142-43.  "As claims for individually based money damages begin to predominate, . . . cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of the class members increases, thereby making class certification under (b)(2) less appropriate."  <u>Allison</u>, 151 F.3d at 413.  The individualized nature of each class member's injury and hence the loss of class homogeneity and cohesiveness becomes particularly acute when an award of compensatory damages, including recovery for emotional dismiss or some other type of similar harm prescribed under Title VII and Section 1981, is sought by the individual class members.

In Count I of the Complaint, Plaintiffs allege that CCE has

denied them compensation, promotions and "other selections," resulting in "emotional distress and other harm."  At oral argument, counsel for CCE estimated the proposed class to consist of approximately ten to eleven thousand employees, employed at different times and for different durations, under different management, at numerous locations throughout the country.  Under the Civil Rights Act of 1991 each putative class member is entitled to seek compensatory and punitive damages and demand a trial by jury where those damages are sought.  Compensatory damages include relief for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  42 U.S.C. § 1981a(b)(3).  Although a plaintiff need not present expert testimony of the existence of emotional distress or mental anguish, an award for compensatory damages for emotional distress is not presumed from a mere violation of a constitutional right and requires individualized proof of an "actual injury."  See Bolden v. Southeastern Pennsylvania Transp. Auth., 21 F.3d 29, 34 (3d Cir. 1994); Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108, 1121-22 (3d Cir. 1988)(holding that compensatory damages for emotional distress in Title VII and Section 1981 are not presumed and require proof of actual injury).  Plaintiffs do not assert that compensatory damages in this case can be computed on "the basis of some objective, uniform calculation from an entitlement

28

to a declaration or injunction against further harm." <u>Barabin</u>,
210 F.R.D. at 161.  Nor can the Court envision a set of
circumstances where an award of compensatory damages that might
include recovery for future pecuniary losses, emotional pain,
suffering, inconvenience, mental anguish, loss of enjoyment of
life, and other nonpecuniary losses suffered by each class
member, would flow directly from an award of the injunctive or
declaratory relief requested by the class as a whole.  Instead,
an award for compensatory damages as alleged in the Complaint
depends on individualized inquires regarding whether and to what
extent each class member suffered harm as a result of CCE's
intentional discriminatory conduct.  Accordingly, the Court finds
that Plaintiffs' request for compensatory damages are not
incidental to class-wide injunctive or declaratory relief.

Furthermore, while an award of punitive damages focuses on
the defendant's conduct (as opposed to the plaintiff's injury for
an award of compensatory damages), the Supreme Court's recent
decision in <u>State Farm Mutual Auto. Ins. Co. v. Campbell</u>,
emphasizes the need for the trier of fact to punish the defendant
"for conduct that harmed the plaintiff, not for being an unsavory
individual or business."  538 U.S. 408, 419-23 (2003).  Thus, in
awarding punitive damages, the jury must consider the degree of
reprehensibility of the defendant's conduct relative to the
specific harm suffered by the plaintiff.  <u>Id.</u> at 422-23.  That

29

said, this Court recognizes that under Third Circuit precedent an award of punitive damages in civil rights cases is not predicated on an award of compensatory or nominal damages. <u>Alexander v. Riga</u>, 208 F.3d 419, 430 (3d Cir. 2000) (stating "punitive damages can be awarded in a civil rights case where a jury finds a constitutional violation, even when the jury has not awarded compensatory or nominal damages"), <u>cert. denied</u>, 531 U.S. 1069 (2001). Moreover, whether punitive damages may be awarded on a class-wide basis, without individualized proof of injury, is an open question that this Court need not address in view of Plaintiffs' request for compensatory damages. <u>See Allison</u>, 151 F.3d at 417 (recognizing possibility that punitive damages may be awarded on a class-wide basis, without individualized proof of injury, where the entire class is subjected to same discriminatory act or series of acts); <u>Palmer v. Combined Ins. Co. of Am.</u>, 217 F.R.D. 430, 438-41 (N.D. Ill. 2003) (finding that where plaintiff sought injunctive relief and punitive damages but not compensatory damages, class could be certified under Rule 23(b)(2) or 23(b)(3)). However, where Plaintiffs request compensatory and punitive damages that necessarily require individualized inquiries as to the nature of the injury of each class member, such relief is not incidental to the injunctive and declaratory relief sought by the class as a whole, and therefore, precludes certification under Rule 23(b)(2).

## 2.   Rule 23(b)(3)

Plaintiffs argue that even if class certification is inappropriate under Rule 23(b)(2) based on the type of relief sought in the Complaint, class certification may be appropriate under subsection (b)(3).  A class may be maintainable under Fed. R. Civ. P. 23(b)(3) when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) provides a nonexhaustive list of factors to assist courts in analyzing cases for predominance and superiority, including "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."  Fed. R. Civ. 23(b)(3).  Subdivision (b)(3) applies to those cases "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23(b)

31

advisory committee's note.

The courts in Allison, Barabin, Thompson, Miller, and Reap denied class certification under 23(b)(3) for essentially the same reasons as for denying class certification under 23(b)(2) — a claim for compensatory and punitive damages in a Title VII disparate treatment action necessarily requires individualized inquires as to issues of liability, damages, and defenses that predominate over the common issue of whether the employer engaged in or condoned racial discrimination.

For example, in Thompson, the court found that "[a]lthough all the plaintiffs claim they were discriminated against by [their employer] on the basis of their race, they allege that they were exposed to the alleged discrimination in varying ways, by different people, for different amounts of time and experienced different injuries." 2004 WL 62710, at *4. Moreover, the employer indicated that it intended to assert defenses unique to each individual claim, including the statute of limitations, res judicata, signed settlement agreements and general releases by several of the affiants and a litany [sic] of potential, legitimate non-discriminatory reasons for taking action." Id. at *5. The court also found that because individual issues dominated with respect to both liability and damages, "the economies of time, effort and expense . . . would not be achieved." Id. Thus, because individualized

32

determinations for the fact finder existed as to the nature of each class member's injury and the unique defenses presented to rebut those claims, the court denied class certification under 23(b)(3).  Similarly, in <u>Barabin</u>, the court found that the plaintiffs' claims for damages would require individualized inquiries regarding each class member's injuries that would predominate over the common issue of whether the disciplinary measures taken against them were discriminatory in nature.  210 F.R.D. at 162.  Likewise, in <u>Miller</u>, the court found that individualized issues of fact predominated over common issues of overall discrimination by the employer, noting that the putative class members were exposed to the alleged discrimination in varying ways, by different people, for different amounts of time and experienced different injuries.  198 F.R.D. at 644.

Here, Plaintiffs' disparate treatment claim would require particularly complex individualized inquiries that preclude common questions of law or fact from predominating.  Plaintiffs allege that CCE's discriminatory conduct affected promotions, overall compensation and "other selections."  In determining the extent, if any, of CCE's liability and the resulting harm, if any, from its discriminatory conduct, the jury would have to review thousands of individual decisions made by various managers and supervisors of CCE, regarding different types of Route Assigned Personnel, located at different facilities, in different

33

parts of the country, spanning a period of more than ten years. The jury also would need to consider whether the individual applied for and was denied the position, examine the individual's educational background, experience, and work record, and determine whether other similarly situated white employees were qualified for the position.  These are but a few of the many individualized, subjective inquiries associated with Plaintiffs' request for compensatory damages.  Assuming Plaintiffs successfully prove CCE's liability for pattern and practice discrimination, the burden then would shift to CCE to present unique defenses as to each class member.  Simply put, individual issues regarding liability, damages, and defenses as to each class member would predominate over common issues to the class as a whole.

The Court also finds that the proposed class action, as alleged in the Complaint, would not be superior to other alternative methods of adjudication.  "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication."  In re Prudential Ins. Co. v. Am. Sales Litig., 148 F.3d 283, 316 (3d Cir. 1998) (quotation omitted).  "While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication

34

of the rights of groups of people who individually would be
without effective strength to bring their opponents into court at
all." Amchem, 521 U.S. at 617. The instant case is not "a
negative value suit." The Civil Rights Act of 1991 allows each
class member to recover up to $300,000, full reimbursement of
attorneys' fees and costs if successful in a disparate treatment
case. Moreover, each class member has the right to a trial by
jury. Given the availability to recover significant money
damages, attorneys' fees and costs, each class member has a
paramount interest in controlling his or her case and carrying it
on as he or she sees fit. Those considerations, as well as the
individualized nature of the evidence required to prove each of
the approximately ten to eleven thousand class members' claims,
persuade this Court that a class action would not achieve
economies of time, effort and expense, and would sacrifice the
procedural fairness afforded to each class member under Title VII
and Section 1981. Accordingly, the Court does not find that a
class action as alleged in the Complaint would be superior to
other available methods for the fair and efficient adjudication
of this case.[4]

**III. CONCLUSION**

---

[4]     Having determined that Plaintiffs cannot maintain a
class action under either Rule 23(b)(2) or Rule 23(b)(3), the
Court need not address whether Plaintiffs satisfy the four
requirements under Rule 23(a).

35

For the foregoing reasons, the Court grants CCE's motion to strike the class action allegations in the Complaint.  Plaintiffs shall have thirty days to amend the Complaint in accordance with this Opinion and accompanying Order.

DATE:        May 17, 2004                 s/Robert B. Kugler
                                          ROBERT B. KUGLER
                                          U.S. DISTRICT JUDGE

36