**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | |
|---|---|
| **ROBERT R. BELL, JR., et al.** | |
| Plaintiffs, | CASE NO. 1:11-CV-00181 |
| vs. | |
| **US XPRESS, INC.** | UNITED STATES DISTRICT JUDGE CURTIS COLLIER |
| Defendant. | |

---

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

**I.      Overview**

A Rule 12(b)(6) motion tests only the plausibility of a Plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Yet at this earliest of postures, Defendant demands much more, adding unpled facts and documents and prematurely challenging the elements of Rule 23 class certification. Because the First Amended Complaint ("FAC") more than adequately states a plausible set of claims brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*., the motion should be denied.

**II.      Background**

Congress enacted the FCRA in 1970 as Title VI of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA"), its omnibus act regulating the consumer credit and personal data reporting industry. Congress enacted the FCRA with the expressed purpose to enable credit grantors and others to be in the best position to make reliable lending and other business (including employment) decisions.  § 1681(a) and (b). The Supreme Court stated the guiding principle of this congressional philosophy nearly 40 years ago: "[B]lind economic activity is

inconsistent with the efficient functioning of a free economic system such as ours." *Mourning v.*

*Family Publication Serv., Inc.*, 411 U.S. 356, 364, 93 S.Ct. 1652, 1658 (1973). Simply put, the

viability of our economy depends on accurate information; Congress designed the FCRA to

increase that accuracy. And of course the statute was also enacted to protect consumers.As the

Court of Appeals recited in "call[ing] attention to the language of one of the House sponsors of

the FCRA":

> '[W]ith the trend toward computerization of billings and the establishment of all
> sorts of computerized data banks, the individual is in great danger of having his
> life and character reduced to impersonal "blips" and key-punch holes in a stolid
> and unthinking machine which can literally ruin his reputation without cause, and
> make him unemployable or uninsurable, as well as deny him the opportunity to
> obtain a mortgage to buy a home. We are not nearly as much concerned over the
> possible mistaken turn-down of a consumer for a luxury item as we are over the
> possible destruction of his good name without his knowledge and without reason.
> The loss of a credit card can, of course, be expensive, but, as Shakespeare said,
> the loss of one's good name is beyond price and makes one poor indeed.'

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) *quoting* Representative Sullivan, 116 Cong.

Rec. 36570 (1970).

In an employment context, these background checks are compiled by third-party

consumer reporting agencies that traffic in the reputations of America's workforce, assembling,

automating and then selling public record information to employers. US Xpress ("USX") is one

of the largest private trucking companies in the nation and has over $1 billion in annual revenue.

http://www.usxpress.com/en/About-Us/Why-US-Xpress.aspx last visited November 30, 2011. It

hires drivers directly as well as in an independent contractor capacity. http://www.usxjobs.com/

last visited November 30, 2011. In soliciting and considering such hires, USX obtains and uses

background checks containing personal information, employment histories and criminal record

histories. The Plaintiffs each assert claims against in its capacity as a "user" of employment-

purposed background checks, or "consumer reports" in FCRA parlance. 15 U.S.C. § 1681a(d).[1] The use of these consumer reports is not without legal limit as the FCRA imposes a rigorous regime that restricts the use of employment reports, including in the trucking industry, to limited circumstances and on very defined terms.

Though proof of "inaccuracy" is not a necessary element of the specific FCRA claims alleged in this case, the consumer reports obtained and then later used by USX regarding the Plaintiffs were inaccurate. FAC ¶ 13-14. Materially so.[2] This is likely true for a large number of consumers who were the subject of en employment report obtained and used by USX as such employment reports – usually lacking social security matches and other more sophisticated data found in conventional credit reports – are historically inaccurate. *See e.g.* http://abcnews.go.com/Technology/background-check-wrongly-ids-job-applicant-sex-offender/story?id=14405696#.Ttk1bkpLofI last visited November 30, 2011 ("We see lots and lots of examples of background checks done wrong," said Dietrich, who noted that more than 80 percent of companies now use background checks to screen potential employees. "And for some people, that can mean the difference between working and not working.")

On September 30, 2011, Plaintiffs filed their First Amended Class Action Complaint (the "FAC") alleging that Defendant violated several provisions of the FCRA when it took adverse action against Plaintiffs, based in whole or in part, on criminal background reports furnished by

---

[1] "The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
    (A) credit or insurance to be used primarily for personal, family, or household purposes;
    (B) employment purposes; or
    (C) any other purpose authorized under section 1681b of this title."

[2] For example, Mr. Bell's report mixed him with a stranger with a different full name, different race, different work history and who had multiple serious felony convictions.

3

USIS Commercial Services, Inc. ("USIS" or "HireRight").  On October 31, 2011, USX moved to dismiss the FAC.

## III.  Argument

The FCRA is not an employment statute, but it imposes substantial duties on employers to provide prospective employees with information about their consumer reports. 15 U.S.C. § 1681b(b).  For some consumers, like the named Plaintiffs, these rights provide a remedy and means to correct material inaccuracies in their employment reports.    Yet even for others who may suffer a derogatory, but accurate report, the FCRA employment report rights are important. As Judge Lauck explained in the *Williams v. Telespectrum* case cited in Defendant's memorandum:

> Instead, § 1681b's advanced notice requirement appears designed, according to an interpretation by the Federal Trade Commission ("FTC"), to "allow consumers to discuss reports with employers or otherwise respond before adverse action is taken." Certainly this requirement is designed in part to allow the consumer to correct inaccuracies in the report, but, as the interpretation of the FTC opinion letter suggests, the statute contemplates a wide range of responses beyond correcting inaccuracy-to "discuss" the report, or to "otherwise respond." Such response might include explaining the meaning of an item on the report, or, say, paying an outstanding fine that the report accurately reflected. In sum, § 1681b's text, and its interpretation by the FTC, indicate that it is not exclusively concerned with accuracy.

*Williams v. Telespectrum, Inc.*, CIV.A.3:05CV853, 2007 WL 6787411 (E.D. Va. June 1, 2007).

**A.**  **The First Amended Complaint properly alleges a plausible claim for Defendant's violation of 15 U.S.C. 1681b(b)(2)(B) (Counts One and Two).**

The FCRA limits the use of employment reports to circumstances in which the employer complies with the provisions stated at 15 U.S.C. § 1681b(b).   Counts One and Two of the FAC

allege violations of the components of § 1681b(b)(2), while Count Three alleges Defendant's violation of § 1681b(b)(3).[3]

### 1. Count One properly alleges Defendant violated § 1681b(b)(2)(B)(i)

The first of these subsections, § 1681b(b)(2), imposes two prerequisites necessarily met before an employer may lawfully obtain and use an employment consumer report. In most employment contexts, § 1681b(b)(2)(A) requires the employer to make "a clear and conspicuous disclosure … in writing … before the report is procured … , in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A). In addition, the consumer applicant must sign a formal authorization. *Id.*

However, the FAC and Defendant's motion both presume that the employment positions sought by Plaintiffs and members of the putative class would be within the scope of § 1681b(b)(2)(C) – truck-driving jobs regulated by the United States Secretary of Transportation. 15 U.S.C. § 1681b(b)(2)(C). In such circumstances, if the consumer "applies for employment by mail, telephone, computer, or other similar means" (i.e. not in person), the employer must meet alternate prerequisites imposed in § 1681b(b)(2)(B).[4] Instead of a disclosure in a separate document signed by the consumer, the employer's use of the report is lawful so long as it meets two requisites: (1) the employer must "provide to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes," and (2) the employer must provide "summary of the consumer's rights under section 1681m(a)(3)[.]" 15 U.S.C. § 1681b(b)(2)(B)(i). In its motion, USX asserts that it satisfied the first requirement. While acknowledging that it did not attempt the second one, it claims there is no private remedy for its noncompliance. USX is wrong in both regards.

---

[3] Count Four is simply an allegation in the alternative to Counts One through Three in which Plaintiffs plead that the USX violations were merely negligent rather than willful. *See* 15 U.S.C. §§1681n and 1681o.

[4] Plaintiffs applied for a position with USX by facsimile.

Count One and the FAC's supporting facts adequately allege Defendant's violation of § 1681b(b)(2)(B)(i). Bell and Fentress sought employment with USX. (Doc. 19, ¶ 8). Defendant procured consumer reports regarding the Plaintiffs for an employment purpose from a consumer reporting agency. (Id., ¶ 12). USX did not provide and the Plaintiffs did not receive the disclosures required at § 1681b(b)(2)(B)(i) that "a consumer report may be obtained for employment purposes." (Id., ¶ 34). The only "disclosure" USX attempted was the small print paragraph on the bottom of the application facsimile form. (Id., ¶ 9; Exh. A). That attempt was legally and practically ineffective as it was unreadable and advised only about a very narrow subset of reports, an "investigative report." (Id., ¶¶ 9. 10, Exh. A). *See* 15 U.S.C. § 1681d, *Disclosure of investigative consumer reports*.

Further, at no time – in the application or otherwise – did Defendant provide "a summary of the consumer's rights under section 1681m(a)(3)" of the FCRA, notice of the consumer's right "to obtain … a free copy of a consumer report" within 60 days and "to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency." (Id., ¶¶ 10, 34). Viewed in the light most favorable to Plaintiffs, the FAC plausibly states a claim that USX violated § 1681b(b)(2)(B)(i).

> **a. Defendant concedes that it did not provide a notice of Plaintiffs' right to obtain a free copy of a consumer background report from the consumer reporting agency within 60 days, and to dispute the accuracy or completeness of any information in the consumer report directly with the consumer reporting agency.**

Section 1681b(b)(2)(A)(i) required USX to provide to Plaintiffs "notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section l68lm(a)(3) of [the FCRA]." Defendant asserts compliance with the first of these requirements, notice that a consumer report may be obtained for employment purposes. This

6

argument is addressed below. Remarkably however, Defendant's only defense to the second of these requirements, disclosure of the summary of consumer rights, is that "Failure to comply with any provision of § l681m, though, cannot support a private right of action." (Doc. 23, at 6). This "hail mary" argument does not answer the allegation that Plaintiffs retain a private remedy for Defendant's violation of § 1681b, rather than § 1681m.

Section 1681b(b)(2)(B)(i) required USX to provide applicants, about whom it used a consumer report, with a summary of consumer rights promulgated under the Section 615(a)(3) of the FCRA, 15 U.S.C. §§ 1681m(a)(3). These specific rights include:

1. The right to obtain within 60 days, under 15 USCS § 1681j, a free copy of the consumer report directly from the consumer reporting agency; and

2. The right to dispute, under 15 USCS § 1681i, directly with the consumer reporting agency the accuracy or completeness of any information in the consumer report furnished by the agency.

Initially, in opposition to this claim, USX leads with an observation that the Dodd-Frank Act resulted in recodification of § 1681m(a)(3) as § 1681m(a)(4). (Doc. 23, at 6). Defendant's implied suggestion that this could limit or preclude assertion of a claim under § 1681b(b) is as incorrect as the body of its challenge. First, Defendant is factually incorrect. For the named Plaintiffs, whose claims arose in 2009 and 2010, the statutory code numbers remain as plead. Dodd-Frank was enacted July 21, 2010, but the effective date of such changes was no earlier than one year after enactment. Dodd–Frank Wall Street Reform And Consumer Protection Act, PL 111-203, July 21, 2010, 124 Stat 1376, § 1100H. July 21, 2011. Second, Defendant's issue would at worst present an uncontroversial scrivener's error – the exact type of which has been previously addressed by the Supreme Court. *Chickasaw Nation v. United States*, 534 U.S. 84, 122 S. Ct. 528, 151 L. Ed. 2d 474 (2001). In interpreting a federal statute that was codified in a way that misidentified a related section, the Court stated, "The canon of statutory interpretation

7

requiring a court to give effect to each word if possible is sometimes offset by the canon that permits a court to reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute." *Id.* Just as in that decision, in this case the post-2011 codification curiosity Defendant has discovered cannot be read any other way than to refer to the rights listed at future § 1681m(a)(4). Interestingly, if Defendant was correct and the Dodd-Frank Act changes were somehow retroactively effective[5], Defendant's obligation would remain as previous § 1681m(a)(2) is to become new § 1681m(a)(3). Defendant still failed to advise Plaintiffs or putative class members regarding these similar § 1681m(a)(2) rights.

USX's only other argument is that because there is not separately a private cause of action for violations of § 1681m, then private remedies for violations of other FCRA sections that mention the section have also been implicitly repealed. There is no basis for such a conclusion. The violation alleged in this case is of § 1681b(b)(2)(i), not § 1681m(a)(3). The § 1681b(b)(2)(B)(i) claim is not derived from § 1681m(a)(3), but rather simply informed by it. The rights and obligations provided in § 1681m remain, but they now lack a private cause of action. Section 1681b(b) has no such limitation.

Courts have rejected similar arguments in application of two comparable FCRA provisions, § 1681s-2(a) and § 1681s-2(b). Section 1681s-2(a) defines the duties of creditors (and other furnishers of information to reporting agencies) to report accurate and complete information, including whether the consumer has communicated a dispute to the creditor. However, there is no private cause of action for a violation of these provisions. 15 U.S.C. §§ 1681c and 1681d. Section 1681s-2(b) does have a private cause of action, but is limited to claims arising from disputes made indirectly through the reporting agencies. The Fourth Circuit

---

[5] Such changes are not retroactively applied. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614 (7th Cir. 2007).

8

considered the "the interplay of § 1681s-2(a) and § 1681s-2(b)" and recognized that a consumer may have a claim under s-2(b) based on a furnisher's failure after the indirect dispute to report in conformity with the accuracy requirements in s-2(a). *Saunders v. Branch Banking And Trust Co. Of VA*, 526 F.3d 142, 149 (4th Cir. 2008).

Defendant's position also ignores the structure of § 1681b. Though briefing may devolve to questions and arguments as to whether or not a disclosure was made or a notice provided, the violations actually suffered under § 1681b are based upon a party's impermissible use of a consumer's report. Section 1681b(b) prohibits the furnishing by a reporting agency or the procurement by a user of an employment report until and unless the prerequisites in the subsection have been met. 15 U.S.C. § 1681b(b)(1) ("A consumer reporting agency may furnish a consumer report for employment purposes only if" the user has complied with the disclosure provisions "with respect to the consumer report, and the person will comply with" the adverse action provisions at § 1681b(b)(3)); 15 U.S.C. § 1681b(b)(2) ("[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it has made the disclosures provided in the section.) And of course this makes sense. Applying the facts in the present case, absent its procurement of Plaintiffs' consumer reports, USX had no obligation to disclose or provide notice.

Section 1681b(b)(2)(B) is not the only FCRA provision that cross-references or relies upon details within § 1681m. Adopting USX's logic would mean that in addition to abrogated private causes of action for violations of 15 U.S.C. § 1681b, consumers would also be prohibited from enforcing rights afforded under 15 U.S.C. § 1681h (Conditions and form of disclosure to consumers), 15 U.S.C. §1681j (Charges for certain disclosures) and 15 U.S.C. § 1681t (Relation to State laws) because these sections cross-reference 15 U.S.C. §1681m.

9

USX attempts to bolster its position by citing cases that hold that a private cause of action cannot be maintained for a 15 U.S.C. §1681m violation. These cases do not hold that consumers are prohibited from maintaining a private cause of action for other sections of the FCRA which cross-reference rights, obligations or notices described in 15 U.S.C. § 1681m. USX's cited cases *strictly* apply to **direct** violations of 15 U.S.C. § 1681m.

Lastly, if Congress intended to prohibit the private enforcement of all sections of the FCRA which reference to 15 U.S.C. § 1681m, it would have provided for said prohibition in each cross-referenced section when the FCRA was amended by FACTA. For example, the FACTA amendments added a new exemption to private causes of action for violations of 15 U.S.C. §§ 1681s-2(e) and 1681m(e), both of which establish a duty upon Federal banking agencies, the National Credit Union Administration and the FTC to establish certain guidelines and regulations. *Perry v. First Nat'l Bank,* 459 F.3d 816, 822 (7th Cir. Ill. 2006). Congress logically included the exemption for violations of 15 U.S.C. § 1681s-2(e) in 15 U.S.C. § 1681s-2(c), since both are in the same section; and logic prevailed with the exemption for violations of 15 U.S.C. § 1681m(e), as it is related to 15 U.S.C. § 1681s-2(e). *Id.* As explained in *Perry*, if Congress intended to exempt a private cause of action for § 1681b(b)(2)(B)(i) simply because it makes reference to rights and obligations related to 15 U.S.C. § 1681m, it would have included such exemptions within the language of 15 U.S.C. § 1681b. Congress did not do so, and the Court should not indulge USX's request reads such an exemption into the remedial law.

Defendant admits it obtained Plaintiffs' consumer reports and that it did so without first providing Plaintiffs a summary of the various rights listed at § 1681m. The violation is indefensible.

**b.    Defendant's fine print paragraph did not provide Plaintiffs notice that a consumer report may be obtained for employment purposes.**

Despite the presumptively true allegations of the FAC, Defendant also asserts affirmatively that its facsimile fine print reasonably disclosed "that a consumer report may be obtained for employment purposes" and thus satisfies the other of two requirements at § 1681b(b)(2)(B)(i). (Doc. 23, at 5).    Because a fact finder could plausibly disagree and find that the language and method of disclosure was unreasonable or ineffective, the present motion should be denied.    Contained in USX's one-page application is an indiscernible paragraph considered by USX to be its proper disclosure under the requirements of the FCRA. (Doc. 19, Exhibit A).

Defendant restates the subject paragraph in its memorandum (Doc. 23, at 5).  It does so of course in order that the Court may effectively read its contents.    This act alone supports the allegation that disclosures within the text of the fine print are not reasonable and effective disclosures.  Yet even after retyping the text, Defendant also finds it necessary to edit out the first part of the paragraph, bold selective lines and more than double the font size.  Its position appears to be that compliance with the requirements in the FCRA is a mere technical formality.  So long as USX somehow, somewhere implies that it will obtain an employment consumer report, it can check off the box of § 1681b(b)(2)(B)(i) compliance.  It also expresses the view, one that is incorrect, that the rigors of the FCRA are somehow "relaxed" for trucking employers. (Doc. 23, at 6 and *in passim*).

"The FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of "reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964-65 (6th Cir. 1998) (citations omitted).  As with other courts around the

country, those in this circuit have continued to recognize and demand such remedial focus. *See e.g. Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 705-06 (6th Cir. 2009) *cert. denied,* 130 S. Ct. 2379, 176 L. Ed. 2d 768 (U.S. 2010); *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 843-44 (6th Cir. 2004); *Holt v. Macy's Retail Holders, Inc.*, 1:08-CV-01285, 2010 WL 280347 (W.D. Tenn. Jan. 21, 2010); *Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1056 (S.D. Ohio 2002). The Court must be "guided by the fact that the FCRA is to be liberally construed in favor of the consumer[.]" *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d at 964.

For these and other purposes, Congress amended the FCRA in 1997 to expand its protections for employment consumer reports and add the provisions that are the subject of this action. However, less than a year later Congress again amended the FCRA, this time by way of the Consumer Reporting Employment Clarification Act of 1998. Contrary to USX's assertion, the purpose of the amendment was not to "relax" or eliminate the trucking industry's compliance obligation, but rather to change it to comport more practically with the industry's unique manner of hiring – accomplished most often by means other than in-person contact. As Representative LeFalce explained:

> Since the companies providing employment screening for trucking firms seek applications in all parts of the country and communicate primarily by telephone, fax or mail, current FCRA requirements that disclosures and authorizations be made in person and in writing are inappropriate and burdensome. The legislation would add several narrowly crafted exceptions to FCRA that would permit— where employment applications are taken by phone, mail or electronically— greater flexibility in providing required disclosures and authorizations either by ''oral, written or electronic means'', and in permitting delivery of a credit report to an applicant within three days after an adverse employment decision.

1998 CR H10220, October 8, 1998. The intended purpose of the statute did not change. Instead, the manner of communication did. As one contemporaneous commentator explained,

> The trucking industry, in particular, with high turnover and a constant need to hire new drivers quickly, had developed hiring procedures that were at direct odds

with the procedures in the Amendments. Specifically, the trucking industry developed a process whereby applicants may apply by telephone. Under the Amendments, even when an application is not submitted in person, the prior disclosure and authorization must be made in writing. The 1998 Amendments drew a very narrow exception to this requirement, and now permit certain employers to provide the prior disclosure and obtain the prior authorization orally or electronically if there has been no "in-person" contact before the consumer report is procured.

Lynne B. Barr & Barbara J. Ellis, *The New Fcra: An Assessment of the First Year*, 54 Bus. Law. 1343, 1349 (1999). And as before, the FCRA's remedial purpose continues to demand an expansive and liberal view of an employer's obligations. The 1998 amendment was intended to do nothing more as it relates to § 1681b(b)(2) than allow for basic consent disclosures to be made other than in writing. They could now be made orally, such as by telephone. Yet USX does not suggest that it makes its disclosures in that manner. It continues to make them in writing. Defendant asserts however that while most employers would be required to make their written disclosures in a manner that is clear and that is conspicuous, the 1997 amendment would now allow trucking companies not merely to make them orally, but as well to now make written disclosures in a manner that is unclear and is inconspicuous. Such an interpretation ignores the collateral sections of the statute, particularly the one that § 1681b(b)(2)(B) immediately follows, and the remedial objectives of the FCRA. *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964-65 (6th Cir. 1998) ("Because the FCRA does not directly address vicarious liability[6], we look to the statute's purposes for guidance in determining whether to interpret the FCRA's words to include liability based on the apparent authority of an employee. We are additionally guided by the fact that the FCRA is to be liberally construed in favor of the consumer, as well as the rule of statutory construction which requires us to read a statutory provision in a manner consistent with the statute's other provisions.") (citations omitted).

---

[6] The Court could properly substitute the phrase "the required clarity of § 1681b(b)(2)(B) disclosures" for the phrase "vicarious liability."

13

It is a universal rule amongst the several statutes making up the Consumer Credit Protection Act, 15 U.S.C. § 1600, *et seq*., that consumer disclosures be meaningful, clear and conspicuous. *Stevenson v. TRW Inc.*, 987 F.2d 288, 291 (5th Cir. 1993) (Fact finder could properly conclude that defendant reporting agency "had negligently and willfully violated [FCRA] 15 U.S.C. § 1681i(d) by failing to provide sufficiently conspicuous notice of Stevenson's right to have his corrected credit report sent to creditors who had made inquiries."). *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 418 (7th Cir. 1980) *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir. 1982) (In a comparable consumer credit case under the Truth in Lending Act, "Nothing can be more central to the entire scheme of TILA than the notion that disclosures made must be legible. The required disclosures become meaningless if the consumer is unable to decipher them[.]"); *Rhoades v. W. Virginia Credit Bureau Reporting Services, Inc.*, 96 F. Supp. 2d 528, 531-32 (S.D. Va. 2000) (In regard to a sister statute, the FDCPA, "The notice Congress required must be conveyed effectively to the debtor. …The analysis is not governed by an objective or logical inquiry by the relatively sophisticated judicial mind, rather a question as to whether the least sophisticated consumer would find the language contradictory or inconsistent, so to leave him confused about his right to dispute the debt.") (citations omitted). Upon the allegations of the FAC, a fact finder could plausibly conclude that Defendant's fine print and omission of clear disclosure language did not provide the required notice to the Plaintiffs.

     **c.**    **Defendant's paragraph discloses only the possible use of an "investigative report", a report not used for Plaintiffs and of a type within only a small subset of FCRA-governed reports.**

Even if the fine print facsimile paragraph were found reasonable and clear as a matter of law, the substance of it still fails to properly disclose that a "consumer report" – a term defined at

§ 1681a(d) – would be used for an employment purpose.  Instead, it discloses only that USX may obtain ***investigative consumer reports*, a narrow and small subset of reports otherwise FCRA-governed.  As explained below, this distinction is an important one, and critical to the claims set forth in the FAC.  Defendant's failure can be understood by analogy.  Assume a provision of law required an entity to disclose that it intended to use a "tool."  Instead, the entity disclosed that it would use a "drill", but thereafter actually used a "hammer."  As in this case, such disclosure of a specific subset that did not contain the type of tool (or report) actually used failed to properly inform.

### i. <u>"Investigative Consumer Reports" and "Consumer Reports" are different and have separate and distinct statutory disclosure requirements.</u>

USX argues that its size 5 font antecedent "legal disclosure" *indicated* to Bell and Fentress that "a consumer report may be obtained" and *expressly stated* that "consumer report(s) are being requested." (Doc. 23, p. 5)  A thorough review of USX's actual disclosure fails to support USX's stated argument.  Instead, the disclosure, along with line upon line of other extraneous information, advises that the applicant's "**investigative** consumer report" was being requested which would include information about the applicants "*character, credit history, work habits, performance, experience, accident history, drug and alcohol test results, including results from any pre-employment drug and/or alcohol test, along with reasons for termination of past employment obtained from previous employers*."  An "investigative consumer report" is starkly different from a "consumer report" under the FCRA and is the subject of a wholly separate statutory scheme regarding disclosure and authorization. These distinctions are outlined below:

| | INVESTIGATIVE CONSUMER REPORT | CONSUMER REPORT |
|---|---|---|
| DEFINITION | 15 U.S.C. § 1681a(e).  A consumer report or portion thereof | 15 U.S.C. § 1681a(d).  Any written, oral, or other |

| | | |
|---|---|---|
| | in which information on a consumer's character, general reputation, personal characteristics, or mode of living is **obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.** | communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (B) employment purposes; |
| **DISCLOSURE REQUIREMENT** | **15 U.S.C. § 1681d.** The employer is required to provide a clear and conspicuous written disclosure to job applicants that includes a written statement informing the applicant of his or her right to request additional disclosures set forth in 15 U.S.C. §§ 1681d(b) and a written statement of rights of the applicant set forth in 15 U.S.C. §§ 1681g(c). | **15 U.S.C. § 1681b(b)(2)(B)(i).** For applications by mail, telephone, computer or similar means, the employer, **prior to obtaining a consumer report**, must provide the applicant with oral, written or electronic notice that a consumer report may be obtained for employment purposes and a summary of rights including the right to obtain, under 15 U.S.C. § 1681j, notice of the right to a free copy of their consumer report within 60 days from the consumer reporting agency and the right to dispute with the consumer reporting agency the accuracy or completeness of the report. |
| **AUTHORIZATION REQUIREMENT** | **15 U.S.C. § 1681d.** The FCRA does not mandate a consumer's authorization for the procurement of an investigative consumer report. | **15 U.S.C. §§ 1681b(b)(2)(B)(ii).** Non-in-person trucking applicants, must have consented orally, in writing or electronically prior to the procurement of the report. |

Defendant's restatement of the fine print paragraph adds bold emphasis at various terms,

**"I understand that you will be requesting information concerning my … criminal history."**

(Doc. 23, at 5). This is of not what the actual text states. Instead, with contextually accurate

16

emphasis, it states, "**I understand that you will be requesting information concerning my driving record and/or information from various state agencies** that maintain records concerning credit record, criminal history, traffic offenses and accidents[.]"  (FAC, Exh. A).  No mention is made of Defendant's protocol to actually obtain such personal information from a less reliable and indirect private reporting agency. *See Ollestad v. Kelley*, 573 F.2d 1109, 1111 (9th Cir. Cal. 1978) ("Although the FCRA's legislative history is less than explicit, the tenor of remarks of members of Congress indicates that the statute is concerned with regulating practices in the credit reporting industry rather than with regulating the record-keeping functions of federal agencies.")

ii.      **USX's disclosure pertains *only* to investigative consumer reports and  does not comply with 15 U.S.C. § 1681b.**

An investigative consumer report, under 15 U.S.C. § 1681a(e), is a report created from *interviews* with neighbors, friends, or associates of the consumer or with others with whom he is acquainted or may have knowledge concerning any such items of information.  Further, pursuant to 15 U.S.C. § 1681d(a)(1), an employer seeking an investigative consumer report must also provide the employee with certain written disclosures to the employee, including a written statement of rights promulgated in § 1681g(c).

The FAC alleges that USX violated Bell's and Fentress's consumer rights under 15 U.S.C. § 1681b, ***not*** under 15 U.S.C. § 1681d.  Indeed, USX did not procure investigative consumer reports regarding its applicants.  And if USX now claims to have done so, it is impliedly admitting to noncompliance with 15 U.S.C. § 1681d.  Further, consumer reports obtained by USX were not the product of personal interviews with an applicant's known associates.  Instead USX instantly receives applicants' consumer report seconds after providing HireRight Solutions, Inc., a consumer reporting agency, certain demographic information.  (Doc.

17

19, ¶12) These reports may, as in the case of Bell and Fentress, contain grossly erroneous information, and provide other incomplete, inaccurate or misleading information. (Doc. 19, ¶12)

Baldly, USX claims that its disclosure complies with 15 U.S.C. § 1681b when it is blatantly authored to refer to reports generated under 15 U.S.C. § 1681d. Analyzing the disclosure line by line confirms USX's disclosure is just as misleading to applicants as the information provided about them:

- Line 1, Part One: The applicant understands that an *investigative consumer report* would be requested.

- Line 1, Part Two: The applicant understands that the report will include information as to their character, credit history, work habits, performance, experience, accident history, drug and alcohol test results, and reasons for termination obtained from previous employers. This language is derived from 15 U.S.C. § 1681a(e), the statutory definition of an investigative consumer report.

- Line 2: The applicant understands that USX (and not a consumer reporting agency) would be requesting information concerning the applicant's driving record and information from various state agencies (again, not a consumer reporting agency) concerning the applicant's credit record, criminal history, traffic offences and accidents. This demonstrates that *USX* and not a consumer reporting agency would obtain this information from state agencies. State agencies are not consumer reporting agencies and are not governed by the FCRA. In the matter at hand, USX obtained Bell and Fentress's consumer report from HireRight, a consumer reporting agency.

- Line 3: The applicant understands he has a right to provide USX with a written request to receive additional detailed information about the nature and scope of the investigation. This language is taken directly from 15 U.S.C. § 1681d(b), and is wholly unrelated to the disclosure requirements contained in 15 U.S.C. § 1681b.

- Line 4: The applicant authorizes USX to obtain the information and agrees that USX may supply information about the applicant to other companies. Nothing in this line pertains to the disclosure requires contained in 15 U.S.C. § 1681b.

**2. Count Two properly alleges Defendant violated § 1681b(b)(2)(B)(ii).**

Count Two and the FAC's supporting facts adequately allege Defendant's violation of §1681b(b)(2)(B)(ii). Bell and Fentress sought employment with USX. (Doc. 19, ¶ 8).

18

Defendant procured consumer reports regarding the Plaintiffs for an employment purpose from a consumer reporting agency. (Id., ¶ 12). Neither Plaintiff authorized the procurement of a consumer report. (Id., ¶¶ 11, 33). Viewed in the light most favorable to the Plaintiffs, the FAC plausibly states a claim that USX violated § 1681b(b)'s presumptive prohibition against obtaining and using a consumer report for an employment purpose absent such consent and authorization.

USX failed to obtain Bell's and Fentress's authorization to obtain a consumer report for employment purposes under § 1681b(b)(2)(B)(ii). USX does not suggest or claim that it solicited orally the authorization and consent of either Plaintiff. Instead, it relies entirely for its defense upon the fine print paragraph at the bottom of the facsimile applications. USX argues that Bell and Fentress signed an application, which expressly informed both plaintiffs that an investigative consumer report was being requested. Consequently, USX assumes that Bell and Fentress properly authorized USX to obtain the report. Plaintiffs have addressed the application form above and incorporate their previous arguments in response. As discussed above, an investigative consumer report is completely different from a public records based consumer report. Neither Bell nor Fentress were advised that a consumer report would be purchased from a consumer reporting agency. Indeed, USX's disclosure misleads applicants to believe that the company intended to interview former associates to confirm the veracity of information provided in job applications.

Beyond this fatal defect, the question as to whether or not Plaintiffs' signatures on the application constituted knowing consent and authorization to obtain and use a consumer report will remain a question of fact inappropriate for Rule 12(b)(6) disposition.

**3. The First Amended Complaint properly alleges a plausible claim for Defendant's violation of 15 U.S.C. 1681b(b)(3)(B) (Count Three).**

The FCRA rights provided in § 1681b(b)(3)(B) are amongst the most important in the employment reporting context. Consumer oversight is the foundation on which Congress built FCRA compliance, and the centerpiece of that self-help system is the adverse action notice. The FCRA's adverse action notice requirements ensure that consumers will know the source of the information that resulted in adverse action, as well as their right to request reinvestigation of allegedly inaccurate information. The notice is a direct tie to the formal dispute process through which consumers may correct erroneous information. The notice not only apprises consumers – in this context, prospective employees – that an adverse action based at least in part on information contained in his or her consumer report has been taken, but also must disclose the right to receive a free consumer report from the responsible consumer reporting agency and must summarize the process to initiate the formal dispute mechanism with that agency.

Section 1681b(b)(3)(B), applicable to USX as a trucking company that makes its employment decisions without in-person contact, states in relevant part:

> [I]f a person who has procured a consumer report on the consumer for employment purposes takes adverse action on the employment application based in whole or in part on the report, then the person must provide to the consumer to whom the report relates, … within 3 business days of taking such action, an oral, written or electronic notification—

> **(I)** that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency;

> **(II)** of the name, address and telephone number of the consumer reporting agency that furnished the consumer report (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis);

> **(III)** that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and

> **(IV)** that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer

> reporting agency the accuracy or completeness of any information in a report.

15 U.S.C. § 1681b(b)(3)(B)(i). A trucking company such as USX is free to comply with this provision "in lieu of the notices required under subparagraph (A) of this section and under section 1681m(a) of this title." *Id. See also* Lynne B. Barr & Barbara J. Ellis, *The New FCRA: An Assessment of the First Year*, 54 Bus. Law. 1343, 1349 (1999) ("The 1998 Amendments drew a narrow exception to this requirement as well, permitting certain employers to forego the pre-adverse action notification stage so long as a post-adverse action notice meeting certain requirements is furnished within three business days.") Instead of a two-part notice process, one mandated to be in writing, USX could have simply telephoned the named Plaintiffs, or sent them an e-mail message or a facsimile, and explained: "We did not hire you because of information in your employment report received from HireRight. You can contact HireRight at [address and telephone number], though it did not make this hiring decision. You may contact HireRight and obtain a free copy of your report as well as dispute any inaccurate information." As simple, cost effective and uncontroversial as this is, such compliance would have been hugely significant for both named Plaintiffs. Each could have learned about and acted to dispute the inaccuracies in their reports years earlier.

Defendant's motion to dismiss Count Three as to Mr. Fentress is limited to one paragraph. (Doc. 23, at 10). The argument is unclear. It seems that USX is arguing that because Fentress did not allege that he was misidentified as having a criminal record, he could not establish that he suffered an adverse employment action from Defendant. USX suggests that the FAC intentionally omits reference to the contents of both Bell's and Fentress's consumer reports to hide the fact that criminal conviction information was not provided. But neither Bell nor Fentress are required to repeat in painstaking the detail the substance of their respective

reports. Nor are records of criminal convictions the sole type of adverse information buried within the consumer reports furnished to USX. Indeed, these reports include references to driving histories, accidents, social security number verifications, and employment histories.

Fentress and Bell both alleged that they were the victims of inaccurate reports used by USX to decline employment. FAC ¶ 13-14. Neither applicant received the statutorily mandated notices advising that the adverse action had been taken and that federal law provided a mechanism to undo the injustice. This alone sufficiently establishes Fentress's adverse action claim, which must remain a component of the FAC.[7] Defendant's insertion of willfulness into this section is also puzzling. The Supreme Court held that "willfulness" under the FCRA occurs when "a company [runs] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69, 127 S. Ct. 2201, 2215, 167 L. Ed. 2d 1045 (2007). As the Third Circuit has explained, a defendant may "willfully violate the FCRA by adopting a policy with reckless disregard of whether it contravenes a plaintiff's rights under the FCRA." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010). The FAC alleges that USX's "violations of the FCRA have been willful, wanton and reckless in that US Xpress knew, or reasonably should have known, that it was failing to comply with the requirements of the FCRA." FAC ¶20. Count Three of the FAC adequately pleads a willful violation of § 1681b(b)(3)(B).

## B. The Allegations of a Putative Class properly remain in the First Amended Complaint.

As should be apparent from Defendant's acknowledgment of the regularity of its challenged procedures, there is little that is remarkable or idiosyncratic regarding the claims

---

[7] Fentress' report shows a "company policy violation" with a previous employer and that he was at an unauthorized location without notice. Neither of these items are accurate. He never violated an employer's company policy and never took his truck to an unauthorized location. Nevertheless, this information, included in his consumer report, was necessarily the basis for his job denial.

alleged in this case. The Defendant's are alleged to have followed the same procedures and used the same form in its FCRA practices.

### 1. Defendant's Rule 23 challenges are premature.

Defendant's challenges to Plaintiffs' class allegations prove the point. There is no rational basis to challenge, brief, argue or rule upon pleading paragraphs that are not yet ripe and may never be before the Court. Defendant explicit seeks an advisory opinion, and does so on straw man positions of its own making.

Arguments in opposition to class certification are better suited for the class certification stage of the litigation. *But see Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("That the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature."). Generally, a motion to dismiss is not the proper posture by which to challenge class allegations and Rule 23 requirements. *Janti v. Encore Capital Group, Inc.*, 2010 U.S. Dist. LEXIS 78199 at *8-9 (S.D. Cal. 2010); *Latham v. Residential Loan Ctrs. Of America¸* 2004 U.S. Dist. LEXIS 7993 at *12 (N.D. Ill. 2004) (Majority of cases chose to address the availability of class certification in the context of a Rule 23 motion for class certification, thus inquiries as to class certification are better addressed at that stage rather than in a motion to dismiss); *Cohen v. Gerson Lehrman Group, Inc.*, 686 F. Supp. 2d 317, 324 (citing *Gardner v. Western Beef Props., Inc.*)("[b]ecause this is decided as a motion to dismiss…and no motion for certification is pending, the Court need not reach defendant's arguments addressed to the particular requirements of Rule 23."); *Quarles v. General Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 7 (D.C. 2003) (Court deferred reaching Rule 23 issues raised in motion to dismiss until class certification stage).

Defendant's particular challenges prove the inappropriateness of the timing of the present motion. Nevertheless, Plaintiffs will respond. The threshold question at this posture is whether or not the case is such that under no set of facts or formulation of a putative class could a Rule 23(b)(3) class be certified. Defendant cannot meet that early burden as numerous courts have already concluded otherwise in class litigation involving identical claims. As recently as March 9, 2010, Judge Jordan approved a final class settlement in such a case. *Smith v. Staley, Inc.*, 3:08-cv-00284 (E.D. Tenn. 2010). Plaintiffs' counsel's most recent § 1681b(b) settlement was approved on August 31, 2011. *Thomas E. Hall v. Vitran Express, Inc.*, 1:09CV00800 (N.D. Ohio 2011) (Doc. 55) (Between $800 and $3,000 cash per class member). Counsel's most recent FCRA employment class certified over contest was on April 27, 2011. *Reardon v. Closetmaid Corp.*, CIV.A. 08-1730, 2011 WL 1628041 (W.D. Pa. Apr. 27, 2011). In fact, in related litigation - present plaintiffs were themselves class members – present counsel served as lead class counsel in litigation and then late stage settlement against HireRight, the national consumer reporting agency that supplied Plaintiffs' employment reports to USX. *Ryals v. HireRight Solutions, Inc.*, 3:09-cv-00625 (E.D. Va. November 3, 2011) (Approving $29 million cash settlement, with between $200 and $2,000 paid to <u>all</u> actual damage consumers). These claims are not simply plausible for class treatment, but actually ideal for it.

**2. The structure of Plaintiffs' damages claims *do not* preclude Rule 23(b)(3) certification.**

Defendant is incorrect in its assertion that actual damages automatically preclude class treatment. However, this is not a dispute that is germane to this case. Plaintiffs do not allege actual damage claims for either themselves or the putative class. In a case such as this one, based on an allegation that a user was not lawfully permitted to procure and use a consumer's

report (because it did not comply with the requisite notice requirements), Plaintiffs are seeking statutory and punitive damages for USX's willful violations of the FCRA. 15 U.S.C. § 1681n.

None of the cases cited and discussed by Defendant are FCRA decisions, or even cases involving claims for simply statutory damages and punitive damages. All assumed collateral claims for actual damages.[8] *Alison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) (compensatory and punitive damages in the context of Title VII discrimination); *Bacon v. Honda of America Mfg.*, 205 F.R.D. 466 (S.D. Ohio 2001) (same); *Mason v. Granholm*, 2007 U.S. Dist. LEXIS 64992 (E.D. Mich. 2007) (same); *Reeb v. Ohio Dep't of Rehab. and Correction*, 435 F.3d 639 (6th Cir. 2006) (same, and as well regarding a Rule 23(b)(2) putative class); *O'Neal v. Wackenhut Servs.*, 2006 U.S. Dist. LEXIS 34634 (E.D. Tenn. 2006) (compensatory and punitive damages in the context of Title VII discrimination). The putative class has not alleged provable actual damages.

This of course is one reason FCRA cases are so amenable to class treatment. As the Sixth Circuit has explained:

> In *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir.2006), the Seventh Circuit … explained that individual-damages issues did not preclude class certification [in FCRA cases] because the class representative could seek statutory damages "without proof of injury" in lieu of actual damages. *Murray*, 434 F.3d at 952-53. Other courts have reached the same conclusion when considering § 1681n statutory damages suits premised on violations of other provisions of the Act. *See Ashby v. Farmers Ins. Co. of Or.*, No. CV 01-1446-BR, 2004 WL 2359968, at *5 (D.Or. Oct. 18., 2004) (holding that no "actual harm" need be proven in an action under § 1681m(a) because "Congress ... has stated in plain terms that statutory damages are available as an alternative remedy to actual damages"); *accord Gillespie v. Equifax Info. Servs.*, No. 05 C 138, 2008 WL 4614327, at *7 (N.D.Ill. Oct.15, 2008) (relying on the same reasoning in determining that class treatment was appropriate for a violation of § 1681g(a)(1)'s disclosure requirements); *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 302-03 (N.D.Ill.2005) (reaching a similar conclusion with respect to a FCRA claim premised on a violation of § 1681b(e)).

---

[8] USX also fails to mention that its arguments are supported almost entirely by cases involving claims under Title VII, discrimination, sexual abuse, or harassment.

*Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 706 (6th Cir. 2009) *cert. denied,* 130 S. Ct. 2379, 176 L. Ed. 2d 768 (U.S. 2010). Courts have similarly held in FCRA claims brought under the very sections at issue in this case. *Beverly v. Wal-Mart Stores, Inc.*, CIV.A. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) ("In the present matter, plaintiff proceeds only under 15 U.S.C. § 1681(n), pursuant to which "[A] plaintiff who has proven that the defendant willfully failed to comply with the FCRA may recover statutory and punitive damages without proof of actual damages." *Williams v. LexisNexis Risk Mgmt., Inc.,* Slip Copy, 2007 WL 2439463 (E.D.Va. Aug. 23, 2007) (quoting *Owner-Operator Indep. Driver Ass'n. Inc. v. USIS Commercial Servs., Inc.,* 2006 WL 2164661, *2 (D.Colo. July 31, 2006).")

The loan FCRA case cited by USX, *Williams v. Telespectrum*, is cited out of context. In that case, present plaintiffs' counsel represented 34 of 38 class members. Eastern District of Virginia District Judge Payne found consolidation superior to class treatment. Yet the opinion is still there, and it is occasionally used in other cases to purportedly support the same arguments now suggested in Defendant's motion. And in fact, it was cited in a subsequent class case before the same judge, Judge Payne. He rejected its usefulness in a case like this one – without alleged actual damages:

> LexisNexis argues that certification is inappropriate because individual issues of statutory and punitive damages predominate over common issues. LexisNexis makes this argument relying on the decision in *Williams v. Telespectrum,* 3:05cv853 slip op. (E.D. Va. June 4, 2007) wherein the Court ruled that individual punitive damages issues predominated in the litigation. That decision is inapplicable to this case. In *Telespectrum,* statutory and punitive damages were to be tried as class claims, and actual damages were to be tried as individual claims. There, individual punitive damage issues predominated because the plaintiffs' alleged actual damages, which had to be tried individually, were much larger than statutory damages, and thus would permit far larger punitive damage awards if each class member tried their claims individually than if the claims were tried on a class-wide basis, where they would be measured for due process concerns against statutory damages only. In this case, by contrast, Plaintiffs do not seek

actual damages at all, and if statutory and punitive damages are awarded, they will be divided equally among the class members. Individual punitive and statutory damages issues therefore do not predominate.

*Williams v. LexisNexis Risk Mgmt. Inc.*, CIV A 306CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007).

In *Gillespie v. Equifax Info. Servs., LLC*, 2008 U.S. Dist. LEXIS 82483 (N.D. Ill. 2008) the court explained the appropriateness of punitive damages in a FCRA class action:

> Equifax's argument that individualized damages issues defeat predominance is similarly misplaced. The statutory **and punitive damages** plaintiffs seek based on Equifax's common conduct **require no individualized inquiries or quantifications of harm**. (internal citations omitted) Equifax's concern that plaintiffs' claims for punitive damages will present individual issues of willfulness, proportionality, and causality is unfounded. Given the nature of plaintiffs' claims, **this is not a case in which the amount of punitive damages is at all likely to differ from consumer to consumer**, **particularly in view of the plaintiffs' decision to eschew claims for actual damages**. Finally, as for Equifax's argument that certification of the case as a class action could lead to a punitive damages award disproportionate to the harm caused, the Seventh Circuit has made it clear "it is not appropriate to use procedural devices . . . to curtail the aggregate damages for violations" that one such as Equifax might "deem trivial."

*Gillespie*, at 21-22 (emphasis added). Far from requiring individualized determination, the case law demonstrates that in most circumstances, the amount of statutory damages under the FCRA is not at all linked to individual circumstances:

> [T]he recovery of statutory damages under the FCRA is not dependent on proof of injury or harm … [and] the factor most germane to the amount of a statutory damages award to class members is the jury's perception of the importance, and hence the value, of the rights and protections conferred on the consuming public by [the FCRA provision being violated].

*In re Farmers Insurance Co., Inc. FCRA Litigation*, 741 F.Supp.2d 1211, 1224 (W.D. Okla. 2010) (internal quotations omitted). This is the case even though statutory damages can be awarded in any amount between $100 and $1000:

> Equifax also asserts that even though actual damages are not sought in the instant case, individual damages issues will predominate as to the amount of statutory damages.... Equifax contends that statutory damages cannot be applied with

27

> precision on a class-wide basis and individual issues would still need to be litigated.... Given the nature of plaintiff's claims, this is *not* a case in which the amount of the damage award is likely to differ from consumer to consumer.

*Chakejian v. Equifax Info. Services LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009) (emphasis added).

*See also Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702 (6th Cir. 2009) *cert. denied*, 130 S. Ct. 2379 (U.S. 2010) (reversing denial of class certification in an FCRA case alleging only statutory damages); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006) (certifying a class under the FCRA and rejecting defendant's argument that damages were an individual issue as "a nonstarter" because the class sought only statutory damages, and class members with actual damages could opt out); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295, 302 (N.D. Ill. 2005) (certifying a class under the FCRA and noting "since the class is requesting statutory as opposed to actual damages, the existence of individual damages is not a barrier to class certification").

Similar to *Gillespie,* the FAC eschews claims for actual damages, opting instead to recover only statutory and punitive violations for USX's willful misconduct. And as explained below, the alternative negligence theory set forth in Count Four of the FAC does not go so far as to seek actual damages.

### 3.    The statute of limitations *does not* preclude Rule 23(b)(3) certification.

As a final attempt to throw something against the wall, USX creates another straw man and attacks it with a theoretical statute of limitations defense. Defendant does not assert that the statute has run as to either named Plaintiff. Its argument is that the class definition, which basically pleads that the class will include all respective consumers whose claims arose during the permitted 15 U.S.C. § 1681p class period, should be changed to include only those whose claims conclusively arose during the last two years. Plaintiffs do not believe the case is properly

postured or ripe to start a negotiation of the final class definition with USX. As should always be the case, the size and definition of the class will evolve and develop through the course of the litigation. "Holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *Bratcher v. Nat'l Standard Life Ins. Co.* (In re Monumental Life Ins. Co.), 365 F.3d 408, 414 (5th Cir. 2004) *cert. denied*, 125 S.Ct. 277 (2004).

The issue now before the Court is not whether a class can be certified, but rather whether it can be certified as a five-year class period or solely as a two-year class period. However, in asserting even its challenge to class size and date range, USX misunderstands the unique statutory text within the FCRA. Section 1681p states:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
> > (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> > (2) 5 years after the date on which the violation that is the basis for such liability occurs.

Unlike the common law discovery rule – when did you learn of the facts that would establish a claim - the discovery rule embedded in FCRA section § 1681p does not run until the date the consumer knows of the "violation." *Broccuto v. Experian Info. Solutions, Inc.*, CIV.A. 3:07CV782HEH, 2008 WL 1969222 (E.D. Va. May 6, 2008). "Given FCRA's clear wording, a plaintiff must file suit within two years from the date that he learns that a credit reporting agency or lender did not act as required by the statute in response to his dispute." *Id.*

On the one hand, USX attempts to aggregate every class member into a two-year limitations period based upon the unsupported contention that USX applicants received copies of their consumer reports and learned that they were being denied employment within days of

completing their applications." (Doc. 23. p. 20). There is absolutely no evidence in the minimal record to date that remotely supports this conclusion. In a nearly identical class action against Vitran Express, District Judge Dan Polster addressed a similar argument stemming from a defense based upon the notion that copies of reports were provided to applicants by HireRight:

> Finally, Defendant argues that amendment is futile because the limitations period has expired for those putative class members who applied for employment between April 7, 2004 and April 7, 2007. Specifically, Defendant argues that because the USIS notice informed applicants that Vitran had obtained copies of their consumer report, provided the results of the consumer report, enclosed the report to the applicants, and provided contact information for further information, the applicants Plaintiff seeks to add had already discovered Defendant's FCRA violations. As the statute of limitations is two years for those who have discovered an FCRA violation, these putative class members have no cause of action.
>
> **However, simply because these applicants were provided certain information by USIS about their consumer report, does not mean that they had notice of Vitran's violations of the FCRA.** The critical issue in this litigation is whether Vitran met its obligations under the FCRA. USIS providing certain information to consumers does not demonstrate that Vitran met its obligations. Accordingly, amendment of the complaint would not be futile.

*Thomas E. Hall v. Vitran Express, Inc*., Case No. 1:09CV00800 (N.D. Ohio 2010) (Doc. 28, p. 4) (emphasis added).

USX overcomplicates the relevant inquiry by suggesting that each class member would be subjected to at least 24 individualized inquiries, most of which are irrelevant for purposes of resolving this litigation. Indeed, the relevant inquiries are outlined in the FAC and represent the common questions of law and fact shared by all class members. FAC ¶ 29.

### 4. USX misunderstands issue certification, an issue that is not even ripe for review.

USX believes that the FAC's prayer for an "appropriate remedy" for negligent violations of the FCRA equates to a request for actual damages. Again, USX relies upon *Bacon,* this time for the proposition that the individual inquiries required to establish actual damages cannot be

dodged by seeking issue certification under Fed. Civ. R. 23(c)(4). (Def. MTD p. 17). Yet USX is incorrect in its suggestion that the phrase "appropriate remedy" is a secret code phrase by which to later add claims for actual damages. Again – plainly: Plaintiffs will not seek to prove or allege claims for actual damages in any of the class claims.

Count Four has a different purpose. It is pled in order to preserve the right to seek certification of liability alone. "A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) *cert. denied,* 131 S. Ct. 998, 178 L. Ed. 2d 826 (U.S. 2011). The Court could certify a class solely on the issue of whether or not Defendant's policies negligently violated the FCRA as to each class member.

## IV.    Conclusion.

**WHEREFORE** Plaintiffs Bell and Fentress respectfully request that the Court deny Defendant US Express's Motion to Dismiss, award Plaintiffs attorneys' fees incurred to defend the motion, and grant all other such relief deemed equitable and just.

Respectfully submitted,

STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA

By:      /s/ Matthew A. Dooley
        Matthew A. Dooley
        Dennis M. O'Toole
        Anthony R. Pecora
        5455 Detroit Road
        Sheffield Village, Ohio  44054
        Telephone:      (440) 930-4001
        Facsimile:      (440) 934-7208
        Email:      mdooley@sheffieldlaw.com
               apecora@sheffieldlaw.com
               dotoole@sheffieldlaw.com

31

CONSUMER LITIGATION ASSOCIATES, P.C.

  /s/ Leonard A. Bennett
Leonard A. Bennett*
763 J. Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
(757) 930-3660
Facsimile (757) 930-3662
lenbennett@clalegal.com
*Pro Hac to be filed

*Counsel for Robert R. Bell, Jr. and the putative class*

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Plaintiffs' Opposition to Defendant's Motion to Dismiss was filed electronically this 2nd day of December, 2011. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via electronic mail.

/s/ Matthew A. Dooley
Matthew A. Dooley
*Counsel for Robert R. Bell, Jr. and
the putative class*