UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| ROBERT R. BELL, JR., | ) | |
| | ) | |
| and | ) | Case No. 1:11-CV-00181 |
| | ) | |
| BERNARD FENTRESS, on behalf of | ) | Judge Curtis Collier |
| themselves and all others similarly situated | ) | JURY DEMAND |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| US XPRESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT U.S. XPRESS, INC.'S REPLY TO
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant U.S. Xpress, Inc. ("USX") files this Reply to Plaintiffs' Opposition to USX's

Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC").

## I.    ARGUMENT

### A.    Neither Plaintiff Can Establish a Disclosure Claim (Count One).

#### 1    The Notice Requirement

Count One of the FAC alleges that USX "willfully violated 15 U.S.C. §

1681b(b)(2)(B)(i) by failing to provide applicants with verbal, electronic, or written notice that a

consumer [report] may be obtained for employment purposes."  (FAC, ¶33).  In fact, though,

USX went beyond the requirements of this provision of the Fair Credit Reporting Act ("FCRA").

Notwithstanding the statutory provisions designed specifically for truck drivers applying

by remote means, Plaintiffs insist that the requirements of the FCRA are in no way relaxed for

the trucking industry.  (Doc. 28, p. 11).  In adding these provisions, though, Congress stressed

that the general requirements of the FCRA were too "burdensome" for this industry and that the

industry should be afforded "greater flexibility." See 1998 CR H10220, Oct. 8, 1998. The added notice provision relaxes the general provision for other employment applicants in several ways. Directly juxtaposed to each other, these provisions are different by design. Specifically, the notice provided to truckers applying by remote means need not be "in writing," need not be "in a document that consists solely of that disclosure," and need not be "clear and conspicuous." Compare 15 U.S.C. § 1681b(b)(2)(A)(i) and 15 U.S.C. § 1681b(b)(2)(B)(i).[1]

The notices that Plaintiffs signed more than meet this standard. These notices stated that USX would request an "investigative consumer report(s)" and "authorize[d]" USX "to obtain the above-described information" relating to credit history, criminal history, and other public records search information. The notices are set forth in one-page documents directly above Plaintiffs' signatures. Notably, Fentress was able to respond fully to requests for information typed in the same font size on the same document. Plaintiffs also were able to quote the notices correctly, even noting a typographical error, in the FAC. (FAC, ¶9, Ex. A; Doc. 25, "Exhibit A").

Faced with their own signed disclosures, Plaintiffs quibble with the term "investigative consumer report" and analogize to an entity's saying it would use a "drill" and then using a "hammer." (Doc. 28, p. 15). A more appropriate analogy would be a complaint that notice that one would have to face the top-ranked LSU football team did not forewarn that one would have to face a college football team. By statutory definition, an "investigative consumer report" is a "consumer report." See 15 U.S.C. § 1681a(e). Therefore, disclosing that one will obtain an "investigative consumer report" necessarily discloses that one will obtain a "consumer report."

An investigative consumer report simply allows one to draw additional information from "personal interviews." That capability does not mean that investigative consumer report cannot

---

[1] While Plaintiffs refer to the analysis in Stevenson v. TRW, 987 F.2d 288 (5th Cir. 1993), of a § 1681(d) claim, that provision explicitly states that a consumer reporting agency must "*clearly and conspicuously*" disclose when an item on a consumer report has been deleted. Id. at 294 (emphasis from court). Again, with § 1681b(b)(2)(B)(i) Congress removed a "clear and conspicuous" requirement.

still draw information from public record searches. Accordingly, only "a portion" of an investigative consumer report may be based on personal interviews. See 15 U.S.C. § 1681a(e). The statute further contemplates that investigative consumer reports will draw information from "public record" searches. See 15 U.S.C. § 1681d(d)(3).

In order to show a "willful" violation of the FCRA, Plaintiffs would have to show that USX ran "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 69 (2007). Plaintiff cannot plausibly allege a basis for such a claim with respect to the notices they signed.

## 2. The Section 1681m(a)(3) Requirements

Count One further alleges that USX willfully violated the FCRA "by failing to provide the applicant with verbal, electronic, or written notice of rights under 15 U.S.C. § 1681m(a)(3)." (FAC, ¶34). Specifically, § 1681m(a)(3) calls for notice of the right to obtain a free copy of a consumer report from a consumer reporting agency within 60 days and to dispute the report with the reporting agency.[2] Congress, though, has removed a private remedy based on "any failure by any person to comply with" any requirement listed in § 1681m. See 15 U.S.C. § 1681m(h)(8).

Plaintiffs concede that individuals now "lack a private cause of action" based on any failure to comply with "[t]he rights and obligations provided in § 1681m." (Doc. 28, p. 8). Plaintiffs also appear to concede that a claim that is derivative to § 1681m would be barred, but protest that their claim "is not derived from § 1681m(a)(3), but rather simply informed by it." (Id.). Plaintiffs' claim, though, is fully derivative.

In amending the FCRA to allow "greater flexibility" for the trucking industry, Congress generally exempted the industry, when dealing with remote applicants, from the requirements of § 1681m. Since the notice obligations set out in § 1681m(a)(3) would still apply, though, this

---

[2] Plaintiffs actually received a free copy of their reports and a letter from HireRight within days. (Complaint, ¶14; FAC, ¶¶8, 15).

provision is cross-referenced in § 1681b(b)(2)(B)(i). It would be an absurd result if this amendment designed to make the FCRA "less burdensome" on the trucking industry were used to single out the industry as alone being subject to a private cause of action based on failure to comply with the notice obligations set out in §1681m(a)(3).

Underscoring the derivative nature of their claim, Plaintiffs cannot establish this claim without showing "a[ ] failure [by USX] to comply with" the obligations set out in § 1681m(a)(3). See 15 U.S.C. § 1681m(h)(8). Even Plaintiffs describe their claim in a derivative manner. The original Complaint forthrightly titled the cause of action "NOTICE OF 1681m(a)(3) RIGHTS." (Complaint, Count Two). The FAC alleges that USX failed to "notify applicants of their rights under § 1681m(a)(3)." (FAC, ¶¶10, 34). Even now, Plaintiffs describe their claim as based on USX's alleged failure to provide the "summary of consumer rights promulgated under the Section 615(a)(3) of the FCRA, 15 U.S.C. §§ 1681m(a)(3)." (Doc. 28, p. 7).

While Plaintiffs argue for a narrow reading of § 1681m(h)(8), the language Congress used, referring to "any failure by any person to comply," could not be more broad. Hence, notwithstanding the general remedial purpose of the FCRA, courts have interpreted the exemption broadly. See Tobler v. Equifax, 2009 WL 1491046 (E.D. Mich. May 27, 2009); Perry v. First Nat'l Bank, 459 F.3d 816 (7th Cir. 2006). With respect to the requirements set out in § 1681m, Congress has chosen for the remedial purpose of the FCRA to be served exclusively through agency enforcement. Not surprisingly, Plaintiffs do not cite a single case that has imposed a private remedy based on a trucking company's failure to comply with the notice obligations set out in § 1681m(a)(3) when dealing with remote applicants. Indeed, Bell, himself, withdrew this same claim in pending litigation against Swift Transportation.

Plaintiffs' reference to other sections of the FCRA that cross-reference § 1681m actually illuminates the derivative nature of their claim. (Doc. 28, p. 9). In particular, § 1681j(b)

provides that a consumer reporting agency must provide certain disclosures "without charge" if a consumer requests the same within 60 days after receiving an adverse action notice pursuant to § 1681m. To establish a claim under this section a plaintiff need not show that the defendant violated an obligation set out in § 1681m. To the contrary, § 1681j(b) presumes that a consumer has received notice pursuant to § 1681m. Instead, a plaintiff would base a § 1681j(b) claim on a reporting agency's failure to provide additional disclosures "without charge." Thus, a § 1681j(b) claim is at most "informed by" and not "derived" from § 1681m.[3]

Ironically, Plaintiffs hope to bolster their argument for a narrow reading of § 1681m(h)(8) by citing <u>Perry</u>, the leading case supporting a broad reading of this provision. The plaintiff in <u>Perry</u> pointed out that the FACTA amendments added a private remedy exemption for failure to comply with § 1681m(e) and argued that "'Congress would not amend 15 U.S.C. § 1681s-2(c) to exempt § 1681m(e) from private remedies if all of § 1681m were *already* exempt from private remedies by virtues of § 1681m(h)(8).'" 459 F.3d at 821 (emphasis in original). While recognizing that this argument against redundancy "has appeal," the court nevertheless rejected it. <u>Id.</u> at 821-22. The broad statutory language of § 1681m(h)(8) required a broad interpretation, even though this reading would render the § 1681s-2(c) exemption "surplusage." <u>Id.</u>

Plaintiffs' argument would turn <u>Perry</u> and the general presumption against redundancy on their heads. Just because § 1681s-2(c) used "surplusage" does not mean Congress always must be redundant. Plaintiffs' claim depends on their showing a "failure … to comply" with § 1681m. It would have been "surplusage" for Congress to have added another subsection to § 1681b(b)(2)(B) when an exemption already applied to the § 1681m(a)(3) notice obligations. Of course, just last year Congress failed to amend § 1681b(b)(2)(B), as it still refers to §

---

[3] Section 1681h(e) refers to § 1681m in a "Limitation of Liability" provision. Finally, § 1681t(b)(1)(C) provides that no State may impose any requirement or prohibition with respect to the subject matter regulated under § 1681m. Thus, § 1681m(h)(8) would not impact a claim under these sections.

1681m(a)(3) and not to § 1681m(a)(4), as it should in light of the Dodd-Frank Act. It should be no surprise that Congress was not so diligent as to make an unnecessary, redundant amendment to § 1681b(b)(2)(B) when it added the private remedy exemption under § 1681m(h)(8).

Plaintiffs' reliance on Saunders v. Branch Banking and Trust Co. of VA, 526 F.3d 142, (4th Cir. 2008), also is misplaced. That case focused on the duties § 1681s-2 placed on Branch Banking and Trust ("BB & T") as a furnisher of information. First, § 1681s-2(a) prohibits BB & T from furnishing information it knows is inaccurate. Id. at 148. Additionally, § 1681s-2(a)(2) provides that BB & T, as an entity regularly furnishing information, must correct and update information so it is "complete and accurate." Id. Next, under § 1681s-2(b), if a reporting agency informs BB & T of a consumer dispute, BB & T must (a) investigate the information, (b) review all relevant information the agency provides, (c) report the results to the agency, and (d) if the investigation finds the information was incomplete or inaccurate, report those results to all other agencies to which it has reported the information. Id. Finally, under § 1681s-2(c), a private right of action exists for violations of § 1681s-2(b) but not for violations of § 1681s-2(a). Id. at 149.

The fact that the plaintiff asserted a claim in Saunders should not be surprising given the factual background of that case.

> [BB & T] failed to properly record the plaintiff's loan for a vehicle on its records. The plaintiff notified [BB & T] several times of his own obligation but was repeatedly told by [BB & T] that he owed no money, and the plaintiff was unable to make any payments on the loan because he had no payment book or loan number to reference with his payment. When [BB & T] finally recorded the debt, it sent the plaintiff a notice that he was "seriously delinquent" and demanded that he pay late fees and other charges. The plaintiff stated he would make payments on the loan, but refused to pay penalties for late fees. [BB & T] subsequently reported the plaintiff's debt, but did not indicate that the debt was disputed, and even as the case went to trial had not remedied the problem. The court in Saunders determined that a reasonable jury could conclude that [BB & T] knowingly and willfully chose to report the debt without reporting the dispute.

Zean v. Unifund CCR Partners, 2009 WL 2461723, *7 (D. Minn. Aug. 10, 2009) (citing Saunders, 526 F.3d at 145). Remarkably, upon receiving notice from a consumer reporting

agency that the plaintiff was disputing information, BB & T responded simply by reporting that the plaintiff had made no payments and that his loan was a write-off. Id.

The plaintiff brought a claim under § 1681s-2(b) based on BB & T's failure to investigate his dispute and then to report that the information provided was inaccurate or incomplete. Saunders, 526 F.3d at 149. While § 1681s-2(a)(2) also required BB & T to confirm that information was "complete and accurate," the obligation to investigate a dispute and to report where the investigation finds information "is incomplete or inaccurate" was an independent obligation under § 1681s-2(b). Moreover, the reference in § 1681s-2(b) to "*incomplete* or inaccurate information" required BB & T to investigate and report "omissions that render the reported information misleading." Id. at 148 (emphasis in original).[4] In contrast to the case at bar, then, the plaintiff based her claim on the substantive obligations of § 1681s-2(b), this claim was at most "informed by" § 1681s-2(a), and the defendant did not even argue that a private remedy exemption applied.

In sum, Plaintiffs cannot assert a cause of action based on an alleged "failure [by USX] to comply with" the obligations set out in § 1681m(a)(3). Under Plaintiffs' reading, the very amendment Congress passed in order to make the FCRA less "burdensome" on the trucking industry would result in truckers alone being subject to a private remedy based on "any failure … to comply" with § 1681m(a)(3). This provision is simply cross-referenced in § 1681b(b)(2)(B) because Congress otherwise exempted the trucking industry from the obligations set out in § 1681m when dealing with remote applicants. To use this cross-reference to "bootstrap" a private cause of action would have the exact opposite effect from what Congress intended.

Plaintiffs cannot plausibly allege that USX ran "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco Insur. Co., 551

---

[4] But see Shannon v. Equifax Inform., 764 F. Supp.2d 714, 721 (E.D. Pa. 2011) (noting contrary ruling in Dickens v. Trans Union, 18 Fed.Appx. 315, 318 (6th Cir. 2001) that "technical accuracy is sufficient").

U.S. at 69. Again, § 1681m(a)(3), as cited in the FAC, no longer even contains the summary of rights to which Plaintiffs refer. Needless to say, the serpentine provisions of the FCRA have proven difficult even for Congress, let alone employers, to decipher.

## B.     Neither Plaintiff Can Establish a Consent Claim (Count Two).

Count Two alleges that USX "willfully violated 15 U.S.C. § 1681b(b)(2)(B)(ii) by failing to obtain the applicants' oral, written, or electronic consent prior to procuring a consumer report for employment purposes." (FAC, ¶¶38). The arguments related to this claim parallel those addressing the "notice" portion of Count One. Plaintiffs signed one-page documents that included a consent directly above their signature lines. As discussed above, Plaintiffs' argument that an "investigative consumer report" could not encompass "a public records based consumer report" is mistaken. (See Doc. 28, p. 19). USX went beyond what is required by the "more flexible" provision designed for the trucking industry. Therefore, Plaintiffs cannot plausibly allege that USX ran "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69.

## C.     Plaintiff Fentress Cannot Establish an Adverse Action Claim (Count Three).

Count Three alleges that USX "willfully violated 15 U.S.C. § 1681b(b)(3)(B)(i) by taking adverse action based in whole or part upon the consumer report without providing verbal, electronic, or written notice" meeting the requirements of that section. While Plaintiffs correctly note that the FAC need not "repeat in painstaking the [sic] detail the substance of their respective reports," the FAC includes no information whatsoever as to Fentress's report. (Doc. 28, p. 21). Plaintiffs now suggest that this "report shows a 'company policy violation' with a previous

employer and that he was at an authorized location without notice."[5]  (Id., p. 22 n. 7).  Plaintiffs should amend the FAC to include this allegation.[6]

## D.  Plaintiffs Cannot Qualify for Class Certification Under Rule 23(b) (Counts One, Two, Three, and Four).

### 1.  Timing of USX's Motion

Before addressing the substance of USX's class certification arguments, Plaintiffs ask the Court not to do so.  As Plaintiffs acknowledge, though, the Sixth Circuit in Pilgrim v. Universal Health Card, 660 F.3d 943 (6th Cir. 2011), rejected such a wait-and-hope litigation strategy.  As the Sixth Circuit stressed, "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs." Id. at 949.  Hence, the Sixth Circuit affirmed an order granting a motion to strike class allegations where the plaintiffs failed to show how discovery would help them.  Id.  Plaintiffs here have not even attempted to explain how discovery would help them.  While USX would have additional arguments against class certification at a later stage, it has focused in this motion on arguments that are apparent based on the FAC.  As cited in USX's opening brief, a number of cases have dismissed class allegations where plaintiffs have failed to explain how discovery would fix the defects of their pleadings.[7]

---

[5] Fentress's report indicated "Company Policy Violation" and "Unauth. Location – W/O Notice" with respect to a job from which he "Resigned/Quit" three years before he applied with USX.  This report also included his rebuttal.  In his application Fentress listed his "Reason for leaving" this job as "Crisis." (Doc. 25, "Exhibit A").  This report did not disqualify him from employment.  Rather, the fact that he had only driven a box van locally since 2007, as indicated on his application, disqualified him.  These details preview additional problems with class litigation of an adverse action notice claim.

[6] For similar reasons, Plaintiffs cannot establish a negligent violation claim under § 1681o.

[7] Plaintiffs also cite Lathan v. Residential Loan Ctrs., 2004 WL 1093315 (N.D. Ill. May 6, 2004), but the Seventh Circuit in Andrews v. Chevy Chase Bank, 545 F.3d 570, 574, 578 (7th Cir. 2008), rejected Lathan in holding "as a matter of law that a class action" for the same claim "may not be maintained." Quarles v. General Inv. & Dev., 260 F. Supp.2d 1, 5-6 (D.D.C. 2003), as cited by Plaintiffs, recognized that defendants may "'move at any time to strike the class action allegations or to dismiss the complaint,'" but denied the defendant's motion because it relied on facts that needed to be developed in discovery. Similarly, Cohen v. Gerson Lehrman Grp., 686 F. Supp.2d 317, 324 (S.D.N.Y. 2010), denied a motion to

## 2. Plaintiffs Cannot Establish a Basis for Class Certification Under 23(b)(3).

### a. Plaintiff's Money Claims Preclude Rule 23(b)(3) Certification.

#### i. The Nature of Plaintiffs' Claims Precludes Certification.

As discussed in USX's opening brief, individual issues arising from money damage claims make the predominance and superiority requirements of Rule 23(b)(3) anything but "self-evident." Wal-Mart Stores v. Dukes, -- U.S. --, 131 S.Ct. 2541, 2558-59. This is not only true with respect to employment discrimination claims, as Plaintiffs suggest. For example, Coleman v. GMAC, 296 F.3d 443 (6th Cir. 2002), the first Sixth Circuit case to adopt the leading case of Allison v. Citgo Petroleum, 151 F.3d 402 (5th Cir. 1998), was an Equal Credit Opportunity Act case in which the plaintiffs sought to recover incremental increases in interest rates.[8]

Focusing on FCRA cases, Plaintiffs seem to concede that Judge Payne's ruling in Williams v. Telespectrum, 2007 WL 6787411 (E.D. Va. June 1, 2007), supports dismissal of their class allegations, but ask the Court to reject Telespectrum and instead follow cases like Judge Payne's ruling two months later in Williams v. LexisNexis Risk Mgmt., 2007 WL 2439463 (E.D. Va. Aug. 23, 2007), and Murray v. GMAC Mortg. Corp., 434 F.3d 948 (7th Cir. 2006). In fact, these cases are opposite sides of the same coin, with different outcomes attributable to the type of actual damages implicated by the claims asserted. The case at bar falls exactly in step with Telespectrum and is distinguishable from LexisNexis and Murray such that the corollary to the rule adopted in those cases also supports dismissal of class allegations here.

As an initial matter, Plaintiffs' suggestion that they "do not allege actual damage claims" and that they only "are seeking statutory and punitive damages for USX's willful violations of

---

dismiss that implicated facts to be developed in discovery. Finally, Janti v. Encore Capital Group, 2010 WL 3058260, *3 (S.D. Cal. Aug. 3, 3010), cited a Ninth Circuit rule that "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." Any such rule would conflict with Rule 23(c)(1)(A) and Sixth Circuit precedent under Pilgrim.

[8] USX recognizes that the plaintiff in Coleman sought certification under Rule 23(b)(2), but, as explained in USX's opening brief, many of the same problems carry over to Rule 23(b)(3).

the FCRA" should be considered. (Doc. 28, pp. 24-25). In fact, they not only assert a willful violation claim, but also a negligence claim under § 1681o, for which they seek "an appropriate remedy." (FAC., ¶46). Under the statute, "an appropriate remedy" can mean only one thing: actual damages, including compensatory damages.

Because only actual damages are recoverable under § 1681o, <u>Beaudry v. Telecheck Serv.</u>, 579 F.3d 702 (6th Cir. 2009), noted "an 'injury' requirement in connection with the private action for *negligent* FCRA violations under § 1681o." <u>Id.</u> at 708 (emphasis in original) (quoting <u>Philbin v. Trans Union</u>, 101 F.3d 957, 963 (3d Cir. 1996)). <u>See also</u> <u>Cavin v. Home Loan Ctr.</u>, 236 F.R.D. 387, 393 (N.D. Ill. 2006) ("It would make sense that a plaintiff seeking damages under 1681o prove actual damage because that is the only remedy available."). Because Plaintiffs disavow any intent to show actual damages, their § 1681o claim is subject to dismissal.

Even the cases Plaintiffs cite recognize that actual damages preclude class certification of FCRA claims. For example, <u>Murray</u> observed that "[a]lthough compensatory damages may be awarded to redress negligence, while statutory damages require willful conduct, introducing the 'easier' negligence theory would preclude class treatment." 434 F.3d at 952-53. Consequently, the plaintiff did not plead a § 1681o claim. Similarly, the plaintiffs in other cases cited by Plaintiffs declined to assert § 1681o claims. <u>See</u> <u>Cavin</u>, 236 F.R.D. at 390; <u>In re Farmers Ins. FCRA Litig.</u>, 741 F. Supp.2d 1211, 1214 (W.D. Okla. 2010); <u>Chakejian v. Equifax Inform. Serv.</u>, 256 F.R.D. 492, 496 (E.D. Pa. 2009) ("If the plaintiff were required to pursue actual damages in this case, individual damage issues would quickly overwhelm the common questions and the suit would be unmanageable and uncertifiable."); <u>Gillespie v. Equifax Inform. Serv.</u>, 2008 WL 4614327, *5 (N.D. Ill. Oct. 15, 2008); <u>LexisNexis</u>, 2007 WL 2439463 at *3; <u>Murray v. New Cingular Wireless Serv.</u>, 232 F.R.D. 295, 298 (N.D. Il.. 2005); <u>Ashby v. Farmers Ins.</u>, 2004 WL 2359968, *5 (D. Or. Oct. 18, 2004). <u>See also</u> <u>Preston v. Mortgage Guaranty Ins.</u>, 2004 U.S.

Dist. LEXIS 28914, *12 (M.D. Fla. June 22, 2004) ("If the Plaintiffs were to seek the most financially advantageous damages for each putative class member – whether that would be in actual or statutory damages – then predominance would render class action inappropriate.").[9]

Even if Plaintiffs were to follow suit and withdraw their § 1681o claim, the nature of the actual damages potentially recoverable for their claims would preclude class certification. Turning again to Murray, the Seventh Circuit ruled that "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." 434 F.3d at 953. The corollary to this rule is that class certification is precluded where potential actual damages are large in relation to statutory damages. That is the case here, where actual damages could include lost income and compensatory damages.

By contrast, potential actual damages were nominal in Murray. The defendant in that case accessed the plaintiff's credit history and sent her a letter offering a loan secured by her mortgage. 434 F.3d at 950-51. The plaintiff claimed that because this offer was not a "firm offer of credit," the defendant had violated § 1681b(c)(1)(B)(i) by accessing her credit history without consent.[10] Id. at 951. In terms of actual damages, the court ruled that "individual losses, if any, are likely to be small – a modest concern about privacy, a slight chance that information would leak out and lead to identity theft." Id. at 953. Thus, the size and prevalence of the actual damages the plaintiff was willing to sacrifice did not create a concern in terms of the predominance or superiority requirements of Rule 23(b)(3).

---

[9] These cases did not allow the plaintiffs to dodge these problems through "issue certification." As discussed in USX's opening brief, case law within the Sixth Circuit has repeatedly ruled that "'Rule 23(c)(4) may not be used to circumvent the predominance requirement of Rule 23(b)(3).'" Taylor v. CSX Transpo., 264 F.R.D. 281, 296 (N.D. Ohio 2007) (citations omitted).

[10] The plaintiff also claimed that the defendant had violated § 1681m(d)(1)(D) by not notifying her that she could close her credit information to all who lacked her prior consent. The court noted that this claim arose before § 1681m(h)(8) removed a private right of action for failure to comply with § 1681m. Id.

Other cases cited by Plaintiffs also did not raise concerns based on the potential size or prevalence of actual damage claims the plaintiffs sacrificed to pursue class certification. Murray v. New Cingular Wireless, 232 F.R.D. at 297-98, and Cavin, 236 F.R.D. at 390, involved the same claim asserted in Murray v. GMAC. The plaintiffs in Gillespie, 2008 WL 4614327, asserted a claim under § 1681g(a)(1) that the defendant had failed to disclose the date of first delinquency for persons with delinquent credit accounts. Id. at *1. The court ruled that "their choice to seek statutory damages [and not actual damages] is entirely reasonable in light of the difficulties inherent in tracing and proving the actual harm caused by [the defendant's] alleged statutory violations…." Id. at *5. Indeed, "[n]othing in the case … provided any basis to believe that any significant number of class members are likely to have suffered actual losses exceeding the $1,000 per person statutory award authorized by section 1681n." Id. at *5 n. 1.[11]

By contrast, the corollary to the Murray rule played out in Telespectrum. The plaintiffs there also declined to assert a § 1681o negligence claim in order to pursue a class action. 2007 WL 6787411 at *2. Since some class members allegedly lost employment due to the FCRA violations, "the actual damages that would be at issue in any individual litigation vary widely, and in some cases are many times greater than the maximum statutory damages." Id. at *6. The exact same type of actual damages are at issue here in the case at bar.

As Telespectrum explained, the impact of sacrificing actual damages would be multiplied because of the relationship to punitive damages. "[T]he amount of punitive damages available against [the defendant] is constrained by the Constitution's Due Process clause." 2007 WL 6787411 at *6. In particular, "'[punitive] damages must bear a reasonable relationship to compensatory damages….'" Id. (quoting BMW of N. Am. v. Gore, 517 U.S. 559, 580 (1996)).

---

[11] See also Chakejian, 256 F.R.D. at 409 (there was not "any evidence that there are class members who have significant actual damages claims"); Ashby, 2004 WL 2359968, *2 (actual damages only involved incremental increase in premiums); In re Farmers Ins. FCRA Litig., 741 F. Supp.2d at 1214 (same).

The Supreme Court has ruled "that '[s]ingle-digit multipliers are more likely to comport with due process ....'" Id. (quoting State Farm Mut. Auto Ins. v. Campbell, 538 U.S. 408, 425 (2003)). "At the class action stage, punitive damages would be measured for due process reasonableness against statutory damages .... However, punitive damages *could* be measured for reasonableness against each plaintiff's individual actual damages, which allegedly range from $2,500 to $40,000 or more per person." Id. (emphasis in original). Moreover, "once punitive damages were imposed (or denied) as to the whole class, claim and issue preclusion would bar individual plaintiffs from re-asserting the same punitive damage claims in their individual cases. Those individual plaintiffs with real, viable claims to actual damages would therefore be precluded from seeking the full range of punitive remedies to which they might be entitled." Id. at *7. Ultimately, individual issues relating to actual damages would "overshadow[ ] the issues common to the class," preventing a showing of predominance under 23(b)(3). Id. The plaintiffs also could not establish superiority since "many class members have a significant interest in controlling their own, separate litigation." Id. "This is especially so as each class member faces different calculations of the strength and size of their claims." Id.

While Plaintiffs acknowledge that Telespectrum "is still there," they suggest that USX has cited it "out of context" and that Judge Payne simply "found consolidation superior to class treatment." (Doc. 28, p. 26). USX, though, has discussed Telespectrum in depth to provide its full context. Moreover, Judge Payne did not simply prefer consolidation of 38 plaintiffs; rather, class certification was inappropriate under Rule 23(b)(3).

Contrary to Plaintiffs' suggestion, Judge Payne did not disavow Telespectrum in granting partial class certification in LexisNexis. That case involved § 1681k(a)(1), which provides that a consumer reporting agency that issues a report "likely to have an adverse effect" upon a consumer's ability to obtain employment must "notify" the consumer "at the time" it furnishes

the report to an employer. 2007 WL 2439463 at *1. LexisNexis did send such notices, but not until "a day after the LexisNexis customer accessed the consumer's report." Id. at *2. Thus, the only actual damages would be those caused by this one-day delay. The court also certified a claim under § 1681i based on LexisNexis's requirement that a consumer produce two forms of identification before it would reinvestigate a report. Id. at *2. Given the nature of these claims, Judge Payne ruled that the class covered individuals "pursuing identical, fairly small claims for relief, who, if required to proceed individually, probably would not assert their claims." Id. at *9. He distinguished Telespectrum in which "individual punitive damage issues predominated because the plaintiffs' alleged actual damages, which had to be tried individually, were much larger than statutory damages, and thus would permit far larger punitive damages awards if each class member tried their claims individually …." Id. at *5.

The court in Gardner v. Equifax Inform. Serv., 2007 WL 2261688 (D. Minn. Aug. 6, 2007), followed this same rationale in denying class certification. In doing so, the court ruled that Murray did not apply because actual damages there, "if any, [we]re likely small," whereas "it [wa]s not clear '[t]hat actual loss is small and hard to quantify'" with respect to the claims before it. Id. at *5 (quoting Murray, 434 F.3d at 951). As in the present case, both named plaintiffs allegedly had suffered actual damages. Id. While they offered to sacrifice actual damages and a § 1681o claim at the alter of class certification, "absent class members would suffer this same disadvantage and lose claims for actual damages should they fail to opt-out of the class action." Id. The court ruled that "[r]equiring class members to affirmatively opt-out to preserve actual damage claims is not justified based on the size and quantification issue of damages in this case." Id. Certification was inappropriate because it would "place[ ] a burden on too many absent class members who may have a significant actual damage claim and the

Court is unwilling to effectively bar absent class members' future legal claims because of the failure of those parties to opt out." Id. (citation omitted).

The court in Preston also rejected class certification based on the nature of potential actual damages. The plaintiffs there alleged that the defendant had failed to comply with adverse action notice requirements under the FCRA but argued that actual damages would only be $9, or the cost to obtaining a credit report on the open market. Id. at *10. The court, however, ruled that "[t]o the extent that the Plaintiffs seek actual damages in the amount of $9.00, or nominal damages, their interests conflict with those putative class members who have suffered actual damages – such as out-of-pocket losses or emotional distress, or both – in excess of $9.00, or some nominal amount." Id. at *12. The court also highlighted the *res judicata* impact the plaintiffs' choice would have on absent class members. Id. at *11.

The potential actual damages in the present case fall exactly in line with Telespectrum. Plaintiffs allege they were denied employment as a result of USX's FCRA violations and assert that "[t]his is likely true for a large number of consumers who were the subject of en [sic] employment report obtained and used by USX as such employment reports … are historically inaccurate." (FAC, ¶¶8-15; Doc. 27, p. 3). Plaintiffs also cite an ABC News story that concludes that FCRA violations "can mean the difference between working and not working." (Id.). Furthermore, Congress has recognized the "high volume of applicants" in the trucking industry and the fact that "the industry hires only one of every ten applicants." See Rep. Leach, 116 Cong. Rec. 36570 (1970). Hence, a significant number of class members would have alleged actual damages well exceeding the statutory damage cap. Under Telespectrum and the corollary to the rule adopted in Murray, these circumstances prevent Plaintiffs from meeting the predominance or superiority requirements of Rule 23(b)(3).

## ii. **Class Certification Would Be Inappropriate Even if Potential Actual Damages Were Minimal.**

What if Plaintiffs could pretend that their claims do not implicate significant actual damages? Because aggregate statutory damages, based on the high volume of applicants in the trucking industry, would be out of proportion with the alleged injury, a class action still would not be a superior means of adjudication. This is particularly true since USX is one of the largest trucking companies in the nation (Doc. 28, p. 2), and Plaintiffs both signed authorization and consent forms and received a free copy of their consumer reports and a letter directly from HireRight within days.

Similar concerns have led courts to reject class certification of claims with parallel damage provisions. As the Sixth Circuit observed in Watkins v. Simmons and Clark, 618 F.2d 398, 399 (6th Cir. 1980), this case law first focused on the Truth-in-Lending Act ("TILA"), which also authorizes statutory damages of not less than $100 nor more than $1,000 per violation. When plaintiffs began filing TILA class actions, "the vast majority of courts" ruled that because of the potential aggregate size of statutory damage awards class certification was not "superior to other available methods for the fair and efficient adjudication of the controversy." Id. at 400 (citing multiple cases).

Congress responded by amending the TILA to cap aggregate damages. The legislative history shows that Congress was well aware of the case law denying certification.

> The leading case in construing the applicability of the minimum liability provisions … to class action suits is Ratner v. Chemical Bank New York Trust Co.[, 54 F.R.D. 412 (S.D.N.Y. 1972).] In the Ratner case, Judge Frankel decided that the action of one cardholder would not lie as a class action, stating that, "The allowance of thousands of minimum recoveries like plaintiff's would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress prescribed as the means of private enforcement."

Watkins, 618 F.2d at 400 (citing Report of the Senate Committee on Banking, Housing and Urban Affairs of June 28, 1973). To "encourage class actions," Congress capped aggregate

statutory damages under the TILA. Id. By contrast, Congress did not alter the statutory damage provisions of the FCRA, even though it knew parallel provisions had led courts to deny certification of TILA claims.

Following Ratner, courts within the Sixth Circuit consistently ruled that minimum statutory damage claims without an aggregate cap could not meet the superiority requirement of Rule 23(b)(3). For example, Arnson v. General Motors., 377 F. Supp. 209 (N.D. Ohio 1974), denied certification of an Economic Stabilization Act claim that called for minimum statutory damages of $100. Id. at 214-15 (citing Ratner). See also Young v. Trailwood Lakes, 61 F.R.D. 666, 667 (E.D. Ky. 1974) (citing Ratner in denying certification of Consumer Credit Protection Act and Interstate Land Sales Full Disclosure Act claims); Lindig v. City Nat'l Bank, 59 F.R.D. 154 (S.D. Ohio 1973) (same for TILA claim); Watkins, 618 F.2d at 403 (same even with an aggregate cap, certification would be "an unnecessary overreaction to the violation here.").

More recently, a series of cases in the Ninth Circuit cited Ratner in ruling that Rule 23(b)(3) certification of FCRA claims was inappropriate where aggregate statutory damages could be out of proportion with actual damages. For example, In re Toys "R" Us-Delaware, Inc.-FACTA Litig., 2010 WL 5071073 (C.D. Cal. Aug. 17, 2010), ruled that:

> The continued vitality of Ratner is underscored by the fact that it was cited favorably by the United States Supreme Court this year. Noting in *dicta* that "[w]hen representative plaintiffs seek statutory damages, pressure to settle may be heightened because a class action poses the risk of massive liability unmoored to actual injury," the Court noted with approval Ratner's holding "exercising 'considerable discretion of a pragmatic nature to refuse to certify a class because the plaintiffs suffered negligible actual damages but sought statutory damages of $13,000,000."

Id. at *6 (citing Shady Grove Orthopedic Assoc. v. All-State Ins., -- U.S. --, 130 S.Ct. 1431, 1465 n. 3 (2010)). The court also cited ten prior cases within the Ninth Circuit that had rejected

Rule 23(b)(3) certification of FACTA cases upon citing Ratner.  Id. at *8-10.[12]  See also Leysoto v. Mama Mia, 255 F.R.D. 693, 696-99 (S.D. Fla. 2009) ("the defendants' potential liability would be enormous and completely out of proportion to any harm suffered" so that "to grant the requested class relief would allow this Plaintiff, and his counsel, to dangle the Sword of Damocles over Defendant") (citing London v. Wal-Mart Stores, 340 F.3d 1246 (11th Cir. 2003)).

The Toys "R" Us court acknowledged that Murray allowed class certification and instead held that an aggregate statutory damages award could be reduced as unconstitutionally excessive. 2010 WL 5071073 at *8 n. 17.  As Toys "R" Us stressed, though, "the Seventh Circuit's rationale in Murray is not altogether clear"  Id.  In particular, "the words 'superior' and 'superiority' do not appear in the opinion, and the court does not address Ratner."  Id.

More recently, Bateman v. American Multi-Cinema, 623 F.3d 708, 714 (9th Cir. 2010), disagreed with "the vast majority of district courts within [the Ninth] circuit" and, like Murray, ruled that an aggregate statutory damages award could be reduced as unconstitutionally excessive, rather than viewed as a barrier to certification.  Id. at 723.  Of course, the rulings of the Ninth Circuit on class certification issues have become frequent target practice for the U.S. Supreme Court.  Since Sixth Circuit case law consistently has denied certification where there is no aggregate cap on statutory damage provisions, USX maintains that the better approach would be to deny certification even if the actual damages implicated by Plaintiffs' claims were minimal.

### iii.  "Identical Claims" Have Not Been Certified in Other Cases

Finally, Plaintiffs argue that their class allegations should not be dismissed because "numerous courts have already concluded otherwise in class litigation involving identical claims."  (Doc. 28, p. 24).  Since Plaintiffs' counsel apparently has been involved in these cases,

---

[12] The court observed that "Judge Frankel has been recognized as one of the architects of Rule 23."  Id. at *5 n. 14.  The court also placed "[t]he concept of 'willful' violation" in the context of "'highly technical' statutes."  Id. at *11 n. 18.  Such violations "can be said to be 'technical' in the sense that" the defendant did not "intentionally set out to violate FACTA's requirements."  Id.

though, they should realize that the cases were not "identical." None of the cases involved the special statutory provisions for truckers applying for employment by remote means. See Hall v. Vitran Express, 2009 WL 3242051, *2 (N.D. Ohio Oct. 5, 2009) (denying motion to dismiss where the plaintiff applied in person). Three of the four cases involved settlement classes and included scant analysis of certification issues at all, and no analysis of the issues raised by USX.

The one case certified over contest, Reardon v. ClosetMaid Corp., 2011 WL 1628041 (W.D. Pa. April 27, 2011), involved a complaint that, while the plaintiff received a written notice of intent to obtain a consumer report and a pre-adverse employment action notice, the notice was not on a stand-alone document and the pre-adverse action notice was not given sufficiently in advance of the adverse action. Id. at *4. While the court's analysis is not clear, the potential size and prevalence of actual damages based on these claims would not be as significant as those asserted in Telespectrum or the case at bar.

Curiously, in obtaining class settlement in Hall, Plaintiffs' counsel extracted additional funds through asserting a private claim under § 1681m, (1:09CV00800 (N.D. 2011) Doc. 55, pp. 4, 6), even though they freely admit here that plaintiffs "lack a private cause of action" for such a claim. (Doc. 28, p. 8). They similarly extracted additional settlement proceeds for actual damage claims in Ryals v. HireRight Solutions, 3:09-cv-00625 (E.D. Va. 2011), even though they protest here that the "appropriate relief" for their § 1681o claim has nothing to do with actual damages. These settlements show how plaintiffs may use the threat of class litigation "to dangle the Sword of Damocles" over a defendant. Leysoto, 255 F.R.D. at 699. Given these pressures, along with the "huge amount of judicial resources expended by class actions," it is only rational that Rule 23(c)(1)(A) encourages courts to dismiss class allegations where appropriate "[a]t an early practicable time." See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan, -- F.3d --, 2011 WL 3524325, *9 (6th Cir. Aug. 12, 2011).

Individual issues related to the statutory discovery rule also preclude Plaintiffs from establishing predominance or superiority. Contrary to Plaintiffs' suggestion, USX does not argue that the shorter two-year limitations period automatically should apply to every class member. Rather, the point is that an individualized analysis would be required for every putative class member to determine which limitations period should apply for that particular person.

As discussed in USX's opening brief, "[t]he shorter two year statute runs from the date when [the plaintiff] was on 'inquiry notice' regarding [the defendant's]" alleged violation. Willey v. J.P. Morgan Chase, 2009 WL 1938987, *5 (S.D.N.Y. July 7, 2009). Therefore, the limitations period for each putative class member will depend on when "information of sufficient specificity [was] available" to that individual to put him or her on "inquiry notice." Id.

While Plaintiff cites Broccuto v. Experian Inform. Solutions, 2008 WL 1969222 (E.D. Va. May 6, 2008), that case is consistent with Willey. Broccuto ruled that "[t]he statute of limitations is based on a consumer discovering that a bank or credit reporting agency did not take certain steps in response to their dispute" since this was the basis for the plaintiff's claim. Id. at *3 n. 1.[13] The court then held that a more developed record and closer analysis would be needed since it "would be difficult to determine exactly when" the plaintiff discovered this violation. Id. That is exactly the point. The circumstances of each putative class member would need to be examined to determine when that individual was on "inquiry notice" of a possible violation.

Bell and Fentress were on "inquiry notice" within days of the violations they allege as they both learned that they would not be hired and received copies of their allegedly inaccurate consumer reports, along with a "derogatory letter" from HireRight. (Complaint, ¶¶7-14; FAC ¶¶8, 15). For other putative class members, the longest possible limitations period of five years

---

[13] Any claim based on the inaccurate information initially being in the plaintiff's report would have been time-barred since the plaintiff "learned of" this inaccuracy outside the limitations period. Id. at *3.

arguably may apply if they are permitted to litigate their claims on an individual basis. Plaintiffs, though, could not expand the limitations period beyond two years on a class basis.

In responding to USX's arguments on the statute of limitations, Plaintiffs cite only one ruling from a class action case, <u>Hall v. Vitran Express</u>, Case No. 1:09CV00800 (N.D. 2010). That decision, however, did not consider Rule 23 issues. Instead, the defendant sought to apply a *per se* rule that a limitations period longer than two years could not apply to any class member. That is not the argument USX makes. The court in <u>Hall</u> did not consider the Rule 23 issues raised here or the line of cases cited in USX's opening brief holding that the need to assess a statutory discovery rule precludes Rule 23(b)(3) certification based on predominance and superiority concerns. Plaintiffs fail to address any of these cases in opposing USX's motion.

### d. A Class Action Would Not Be a Superior Means of Adjudication

Combining the factors discussed above, it is clear that a class action would not be a superior means of adjudication. Plaintiffs do not take issue with the scenario outlined in USX's opening brief. To recap, an applicant who experienced willful violations resulting in denial of employment five years ago and who was not on inquiry notice of these violations could bring a separate action in which he or she could recover five years of lost wages, compensatory damages, punitive damages (based on a multiplier of actual damages) and attorney fees. By contrast, in Plaintiffs' proposed litigation approach, any actual damages would be sacrificed, punitive damages could not be obtained in a ratio taking into account the individual's substantial actual damages, and the applicant's claim would be time-barred because the statutory discovery rule cannot be applied on a class basis. Class litigation also would be unmanageable in that the claims of individual class members would depend on whether a particular individual should be relieved from a signed consent, whether the individual was terminated based at least in part on a

consumer report, whether the information in this report was inaccurate, or, if accurate, whether the individual nevertheless could have addressed USX's concerns and obtained employment.

Bell and Fentress have as much of an incentive to bring their claims on an individual basis as would an employment discrimination plaintiff since they may pursue the same damages. Notably, the U.S. Supreme Court in AT & T Mobility v. Concepcion, 563 U.S. --, 131. S.Ct. 1740, 1753, 179 L.Ed.2d 742 (2011), ruled that a claim as small as $7,500 "was most unlikely to go unresolved" even if it only could be pursued on an individual basis. It should come as no surprise, then, that a number of cases upon which Plaintiffs rely, including Beverly, Broccutto, Jones, Saunders, Perry, Stevenson, and Cortez v. Trans Union, 617 F.3d 688 (3d Cir. 2010), pursued FCRA claims on a non-class basis. See also Arnson, 377 F. Supp. at 214 (noting incentive to bring individual lawsuits under parallel minimum statutory damage scheme); Leysoto, 255 F.R.D. at 698 (statutory damages and attorney fees gave incentive to bring individual FCRA lawsuits); Garner, 2007 WL 2261688 at *6 (same).

## III.    CONCLUSION

Based on the analysis outlined above and in its opening brief, USX respectfully requests that its Motion to Dismiss be GRANTED.

Respectfully submitted,

**MILLER & MARTIN PLLC**

By: *s/ Roger W. Dickson*
     Roger W. Dickson (BPR No. 01933)
     Bradford G. Harvey (BPR No. 17393)
     Alison B. Martin (BPR No. 22366)
1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-6600
Facsimile: (423) 785-8480

Attorneys for Defendant U.S. Xpress, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Michael Schmitt, Esq.
ORTALE, KELLEY, HERBERT & CRAWFORD
200 Fourth Avenue North
P.O. Box 198985
Nashville, TN 37219-8985

Matthew A. Dooley, Esq.
Dennis M. O'Toole, Esq.
Anthony R. Pecora, Esq.
STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA
5455 Detroit Road
Sheffield Village, OH 44054

Leonard A. Bennett, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard
Suite 100
Newport News, VA 23606


**MILLER & MARTIN PLLC**


By: *s/ Roger W. Dickson*