**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION**

| | |
|---|---|
| **ROBERT R. BELL, JR., et al.,** | |
| Plaintiffs, | CASE NO. 1:11-CV-00181 |
| vs. | UNITED STATES DISTRICT JUDGE CURTIS COLLIER |
| **US XPRESS, INC.** | |
| Defendant. | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PROPOSED CLASS REPRESENTATIVE SERVICE AWARDS**

On September 4, 2014, the Court conducted a final fairness hearing to determine the fairness, reasonableness and adequacy of the class settlement reached between Named Plaintiffs Robert R. Bell, Jr. and Bernard Fentress and Defendant US Xpress, Inc. ("USX"). Before entering the final approval order, the Court requested supplemental authority in support of the Named Plaintiffs' incentive awards.

Pursuant to Section 7.3 of the parties' Stipulation of Settlement, Named Plaintiffs may seek an award of up to $15,000 for each of the Class Representatives as a service award for representing the Class. Accordingly, Named Plaintiffs seek an award of $15,000 each for their service as class representatives. The Class was notified that the Named Plaintiffs could seek such awards, and, despite an unprecedented 91% mail delivery rate, *no one* in the 85,362-person Class objected to the proposed service awards, or to any other settlement term. Only .01% of the class members excluded themselves from the settlement. The class members have resoundingly approved this settlement, and without any basis for an appeal by a class member, this Court's Final Approval order will stand.

1

As set forth below and in the Supplemental Declarations of the Class Representatives, these awards are well deserved and supported by cases from the Sixth Circuit and this Court.

### A. The Class Representatives have provided great service to the Class.

Named Plaintiffs have devoted a significant amount of time and effort to the successful prosecution of this case. As addressed below and in the attached declarations, they committed substantial time and attention to this complex litigation. But they did more than merely offer their time. Named Plaintiffs took a burden and risk upon themselves to permit the prosecution of these three cases on behalf of the national Class. They avoided any "pickoff" and the often-alluring opportunity to leverage a class claim for individual benefit. Messrs. Bell and Fentress likely could have gained many times more in a confidential, individual settlement that would have doomed any class recovery. Indeed, when a defendant is confident that another class action will not be brought, it is common that defendants will attempt a "pick off" strategy. Thus, the service of each Named Plaintiff is not properly measured only in time, but also in the commitment and sacrifice evidenced for the class benefit.

Plaintiff Bell contributed significantly to the litigation. *See* Supplemental Declaration of Robert R. Bell, Jr. ("Bell Supp. Decl."). He actively participated in every aspect of this case including settlement discussions. Mr. Bell also made himself available whenever required by his attorneys or the Court; he did so at substantial risks to his self-interest. For example, Mr. Bell reviewed every pleading and motion filed on his behalf to ensure factual accuracy. Even more importantly, he remained available for discussions with Class Counsel on short notice despite other work and family commitments. He knowingly and voluntarily gave up substantial state law remedies in order to prevent U.S. Xpress, Inc. from "violating the rights of others like [himself]" as a class representative.

Plaintiff Fentress was also integrally involved in the litigation. *See* Supplemental Declaration of Bernard Fentress ("Fentress Supp. Decl."). Plaintiffs Fentress and Bell both remained highly involved in the preparation of factual summaries detailing their respective experiences with Defendant. The involvement of the Class Representatives was critical to the successful settlement achieved, and greatly benefitted the Class.

**B.      The Sixth Circuit's opinion in *Vassalle v. Midland Funding LLC* does not prohibit the incentive award requested by Named Plaintiffs.**

In *Vassalle v. Midland Funding LLC*, plaintiffs brought a class action lawsuit against Midland under the Fair Debt Collection Practices Act (FDCPA) claiming the defendant's employees would routinely sign form affidavits falsely claiming to have personal knowledge of a debtor's debt. 708 F.3d 747, 752 (6th Cir. 2013). The district court declared this so-called "robo-signing" a violation of the FDCPA. A settlement was reached and approved by the district court, which provided for:

- $5.2 million paid into a common fund with a class size of 1.4 million people;

- Attorney fees not to exceed $1.5 million;

- Incentive awards of $8,000 collectively ($2,000 each) ***plus debt forgiveness not available to any class members***; (emphasis added).

- A year-long injunction providing Midland with protection against future claims based on false affidavits;

- A classwide release where class members forfeited all claims, under both federal and state law, against Midland and also gave up the right to challenge the state court judgments obtained by the use of the same falsified affidavits that the District Court previously enjoined the Defendants from using;

- Out of the class of approximately 1.4 million, ***only 133,000 filed claims (9.2%); 4,262 opted out; and 61 class members filed objections, including the Attorneys General of nearly every state in the country.*** *Id.* at 753. (emphasis added).

3

The Sixth Circuit overruled the district court's ruling and rejected the settlement because "the disparity in the relief afforded under the settlement to the named plaintiffs, on the one hand, and the unnamed class members, on the other hand, made the settlement unfair." *Id.* at 755. The Court's rejection of the settlement focused on a provision that granted the named plaintiffs exoneration of their debts. *Id.* The Court noted, "[i]f the 1.44 million unnamed class members receive this benefit, like [the named plaintiff], they would be absolved of debts in the hundreds or even thousands of dollars. Instead, the settlement actually prevents the unnamed class members from using Midland's use of false affidavits against Midland in any other lawsuit, virtually assuring that Midland will be able to collect these debts." *Id.*

As a result, particularly important to this Court's analysis, the *Vassalle* Court never addressed the permissibility of incentive awards: "[b]ecause we find the settlement is unfair to the unnamed class members in light of Midland's exoneration of the named plaintiffs' debts, it is unnecessary for us to pass on the appropriateness of incentive awards." *Id.* at 756. However, a plain reading of the Court's analysis indicates implicit approval of such awards: "[w]hile we have 'never explicitly passed judgment on the appropriateness of incentive awards,' we have found that 'there may be circumstances where incentive awards are appropriate.' [citing *Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003)] Other circuits have more explicitly approved of incentive awards." *Id.*

**C.     The absence of any objections illustrates the reasonableness of the agreed upon incentive awards.**

A number of courts in this district and circuit, in assessing the reasonableness of incentive awards post-*Vassalle*, have focused on the number of objections. *See Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *13 (E.D. Mich. July 31, 2013) (noting that "none of the objections mentioned or objected to the incentive award" in approving $7,000 award for named

4

plaintiff); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 301 (W.D. Ky. 2014) ("The Court notes that no objections were made to the request for incentive rewards."); *Johnson v. Midwest Logistics Systems, Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 to named Plaintiff in an identical FCRA class action based on, *inter alia*, no objections to the fairness and adequacy of the settlement and fees); *accord In re Southeastern Milk Antitrust Litig.*, Master File No. 2:08-MD-1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) ("[t]he overall value of the settlement to the class is further illustrated by the relative lack of objections from class members to the requested fees.") Undeniably, it was the strength of the objections in *Vassalle* that brought the case to the Sixth Circuit after 8 of the 61 total objectors filed an appeal. 708 F.3d at 751.

In the instant case, ***not a single class member has filed an objection*** to any settlement term, including the incentive awards. Further, only twelve (12) Class Members have asked to opt out of the settlement. This overwhelming silence from the unnamed Class Members is a remarkable endorsement of the reasonableness of the settlement and the requested awards considering the class is over 85,000 strong. Indeed, unlike in *Vassalle*, this settlement will not be subject to appeal.

      **D.**    **The substantial benefit recovered by the class demonstrates the reasonableness of the requested incentive awards.**

It must again be noted the expansive reach of this multi-million dollar settlement. *See Johnson*, 2013 WL 2295880, at *5, (noting the degree of benefit to the class members as an important factor in assessing the appropriateness of an incentive award) (citing *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). Through the detailed notice process and the receipt of settlement funds sufficient to cover the cost of their consumer reports, each of the over 86,000 Class Members are now armed with sufficient information to guard their personal and professional

reputations. Equally important, because this settlement does not feature a claims process, each class member will share in recovery. *See, e.g.*, *In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 404 (D. Mass. 2008) (recognizing that where settlements require class members to submit claims, response rates are typically around 10-15%). This is a substantial tangible benefit for an entire class. *Cf. Vassalle*, 708 F.3d at 755 (discerning that "the relief actually provided to the unnamed class members is perfunctory at best."). If a claims process had been implemented here, as in Vassalle, roughly 20% of the class, at best, might have received around $100 and the other 80% of the class would have received nothing. This settlement is nothing short of a fantastic result for class members who would otherwise have not known of these claims. Further, any undeliverable or uncashed checks - often a substantial sum - will benefit the Tennessee-based *cy pres* recipients selected by both sides as a result of this Court's feedback and guidance. None of these substantial benefits would have reached the class members and the *cy pres* beneficiaries but for the commitment of the class representatives in this case that has now reached a successful end after more than 3 years of litigation.

For the foregoing reasons, the Court should award Class Representative Service awards in the amounts of $15,000.00 each for Robert R. Bell, Jr. and Bernard Fentress.

Respectfully Submitted,

O'TOOLE, MCLAUGHLIN, DOOLEY & PECORA

By: /s/ Matthew A. Dooley
Anthony R. Pecora (0069660)
Matthew A. Dooley (0081482)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone (440) 930-4001
Fax: (440) 934-7208
Email: mdooley@omdplaw.com
apecora@omdplaw.com and

6

and

CONSUMER LITIGATION ASSOCIATES, P.C.
Leonard A. Bennett (Va. Bar No. 27523)
12515 Warwick Boulevard
Newport News, Virginia 23606
Tel: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com

*Counsel for Plaintiffs and the putative class*

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Plaintiffs' Supplemental Statement In Support Of Proposed Class Representative Service Awards was filed electronically this 23rd day of September, 2014. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.

/s/ Matthew A. Dooley
Matthew A. Dooley

G:\27\27096\Motion\Supplemental Memo in Support of Incentive Awards.docx

7